THE GEORGIA RAILROAD AND BANKING CO. *v.* MILLER.

1. Under the statutes of this State, a railroad company is liable for
   injuries to the person of an employee by the negligence or mis-
   conduct of other employees of the company, without negligence
   on his part, whether such injuries are connected with the run-
   ning of trains or not.  That a rule of liability not applied to other
   classes of employers is thus imposed upon railroad companies,
   does not render these statutes obnoxious to the fourteenth amend-
   ment to the constitution of the United States, as denying to such
   companies the equal protection of the laws.
2. The declaration alleging that the plaintiff's hand was crushed and
   injured by the falling of an eccentric upon it, proof that the
   eccentric in falling knocked his hand upward and crushed it
   against other machinery, was not so far inconsistent with the
   declaration as to constitute a substantial variance between the
   *allegata* and *probata*, but it would have been better to amend the
   declaration so as to make it conform accurately to the evidence.
3. The allegations of the declaration being ambiguous and uncer-
   tain as to whether the negligence intended to be complained of
   was only the failure to warn the plaintiff generally that going
   under the engine and aiding in removing the eccentric was dan-
   gerous, or the further failure to warn him specially of the result

of unfastening the eccentric and the consequences thereof when the fireman was about to remove the bolt, and it being very doubtful whether it was negligent at all to fail to give plaintiff the general warning indicated, and the evidence of negligence upon the theory that the special warning was not given being vague and uncertain, and it being apparent that it can be cleared up and made more satisfactory so as to show the cause to which the injury was really attributable, the ends of justice require a new trial.

November 14, 1892.

Railroad employee. Constitutional law. Evidence. Pleading. Negligence. Before Judge RICHARD H. CLARK. Rockdale superior court. March term, 1892.

Miller sued the railroad company for damages from personal injuries. He alleged, in brief, that he was a train-hand of defendant running on a freight-train, it being his duty to couple and uncouple cars and do any and all other acts connected with the train, and the running and operating thereof, which he was ordered to do by his co-employee and superior officer, the conductor who had charge of the train. Near midnight at the Conyers depot of defendant, the engine attached to the train broke down and gave out on one side, when the conductor ordered him to go to the engine, report to the engineer and assist in getting the engine in running order. In obedience to this order he reported to the engineer, who also was an employee of the company and the next officer under the conductor in charge of the train, and the engineer ordered him to go with the fireman, another employee of defendant, under the engine and remove the eccentric on the disabled side of the engine, so as to throw the steam or driving power on the other or uninjured side of the locomotive. In company of the fireman he went under the engine, and, being wholly unacquainted with its mechanism and unable to render any assistance except as he was directed, was told by the fireman to hold the eccentric while the fireman did the work necessary to disengage

and remove it from the engine. While he was thus holding the eccentric when the last bolt, as he was afterwards informed, was removed, the eccentric being of great weight fell upon his right hand, crushing and maiming it, etc. He knew nothing of the dangerous position in which he was placed, and nothing of what would be the result of unfastening the eccentric, and received no warning from either the conductor, engineer or fireman. He had no notice that the fireman was about to remove the bolt or what would be the consequences thereof. He was in a dangerous position unknown to him, but known to his superior officers and co-employees, and no caution was given him. He was hurt while simply obeying orders in the discharge of his duty under the directions of his superior, and without any fault or negligence on his part. The conductor, engineer and fireman were negligent and at fault in putting him in such a dangerous position and giving him no warning of his danger, and his injury was the result of said negligence.

For the other facts see the opinion.

J. B. CUMMING, A. C. McCALLA and BRYAN CUMMING, for plaintiff in error.

G. W. GLEATON and FOSTER & BUTLER, contra.

SIMMONS, Justice.

The plaintiff in the court below obtained a verdict for $2,000 against the railroad company on account of an injury to his hand, alleged to have been sustained while in the discharge of his duty as an employee of the defendant, without fault or negligence on his part, and by reason of the fault and negligence of other employees of the defendant in putting him in a dangerous position and giving him no warning of the danger. A new trial was refused, and the defendant excepted.

1. It was complained that the court erred in declining to charge as requested, that "if the plaintiff was injured

by the negligence of a fellow-servant, then he cannot recover unless such negligence of a fellow-servant was in the running of trains or other machinery of the defendant." We have repeatedly held that under the statutes of this State, a railroad company is liable for injuries to the person of an employee by the negligence or misconduct of other employees of the company, without negligence on his part, whether such injuries are connected with the running of trains or not. *Central R. Co.* v. *Thompson,* 54 *Ga.* 509; *Ga. R. etc. Co.* v. *Ivey,* 73 *Ga.* 499; *Ga. R. etc. Co.* v. *Brown,* 86 *Ga.* 320. It was contended, however, that statutes which vary as against railroad companies the general rule which exempts the master from liability to a servant for injuries caused by the fault or negligence of a fellow-servant, are obnoxious to the fourteenth amendment to the constitution of the United States, as denying to such companies the equal protection of the laws. This contention is answered by the decision of the Supreme Court of the United States in the case of Missouri Pacific Ry. Co. v. Mackey, 127 U. S. 205, in which the question here made was ruled upon. See also, to the same effect, Missouri Pacific Ry. Co. v. Mackey, 127 U. S. 205, s. c. 33 Am. and Eng. R. Cas. 390, affirming 33 Kan. 298, s. c. 22 Am. and Eng. R. Cas. 306; Buckles v. R. Co., 64 Iowa, 603, s. c. 21 N. W. Rep. 107; Herrick v. R. Co., 31 Minn. 11, s. c. 11 Am. and Eng. R. Cas. 256; Ditberner v. R. Co., 47 Wisc. 138, 7 Am. and Eng. Enc. of Law, tit. Fellow-Servants, 862.

2. The declaration alleged that the eccentric "fell upon" the plaintiff's hand, crushing and maiming it. He testified that his hand was crushed and maimed by being knocked upwards and against other machinery by the eccentric when it fell. It was contended that in this respect there was a fatal variance between the allegations and the proof, this testimony showing that the

eccentric did not "fall upon" the plaintiff's hand. While we think it would have been better to amend the declaration so as to make it conform more closely to the evidence, this was not such a material variance as to require that the verdict be set aside. The declaration put the defendant on notice that the injury was caused by a certain instrument, and by its falling and striking the plaintiff's hand, and when it was shown by the evidence that by this instrument and in this manner the injury was caused, proof that the instrument crushed and maimed his hand by striking it upwards instead of downwards, and against something above instead of under it, did not in any essential respect vary the case as presented by the declaration. Besides, there was no objection to this testimony when offered. See *Haiman* v. *Moses*, 39 *Ga.* 708. See also *Central Railroad Co.* v. *Hubbard*, 86 *Ga.* 627 (4), and cases cited.

3. The material parts of the declaration are set out in the report prefixed to this opinion. It will be seen that the ground upon which the plaintiff seeks to charge the defendant with liability, is the alleged fault and negligence of the conductor, engineer and fireman in putting him in a dangerous position and giving him no warning of the danger. It is not clear, however, whether the failure to warn, here complained of, was merely the failure to warn him in a general way that it was dangerous to go under the engine and hold the eccentric while the fireman did the work necessary to disengage and remove it, or in addition to this, the failure to warn him specially that the fireman was about to remove the bolt and of the consequences which might result from its removal. Under the evidence, the right to recover upon either theory is very doubtful. The testimony bearing upon this part of the case was substantially as follows :

While the plaintiff was at work as a train-hand on

the defendant's train, the slipping of the eccentric, which was a part of the mechanism under the engine, caused the engine to stop, and it became necessary that this should be remedied before the train could proceed. The plaintiff went to the engine with the conductor, who left him there to help the engineer and the fireman. The conductor was his superior officer, whose directions it was his duty to obey; and he was also under the engineer, whose authority ranked next to that of the conductor. The engineer asked him to "go under the engine and help the fireman to take down the eccentric." He was not a mechanic, and he knew nothing about the eccentric except what he was told. He was twenty-five years of age and had been working for some months in the capacity in which he was then employed. He asked no questions, but at once went under the engine, as directed, and took hold of the "blade" of the eccentric at the end which had been disengaged from the engine, while the fireman proceeded to disengage the other end, by knocking out the bolts. The eccentric was described as "an oblong around the driving-wheel," held in place by an iron "strap," which was quite heavy, and which fitted around it, and from which extended a steel "blade" three or four feet long. There were two of these eccentric-blades, extending from their attachments at the axle, towards the front of the engine, the one above the other, at different angles, widening apart until the ends were about fifteen inches from each other, thus giving them the relative positions of the blades of a partly opened pair of shears. Each blade tapered from where it was attached to the eccentric-strap, at which point it was about three inches in width, until the end was reached, where its width was about an inch; and it was there fastened by a bolt to what was termed the "link." According to the plaintiff's testimony, he took hold of this end of the lower blade after the fireman had knocked

out the bolt which held it to the link, his right hand on top of it and his left underneath it, while the fireman was knocking out the bolts at the axle; and when the fireman knocked out one of the bolts at the axle, that end, which was heavy, fell, causing the plaintiff's end, which was very light, to go upwards and strike his right hand against the machinery above it. He further testified that nothing was said to him as to the taking out of the bolt at the axle, but that he knew the fireman was taking out the bolts, because he saw him; it was all under his eyes, and there was a light under the engine while the work was being done.

The plaintiff's version of the occurrence differs from that of the other witnesses. The engineer and the fireman testified that he was holding the upper blade, and not the lower one, and that instead of the fireman allowing his end to fall, the plaintiff let his own end fall, and that instead of striking his hand upwards, the blade fell upon it.

Upon the question of warning. there is positive testimony of the engineer and the fireman, uncontradicted by any positive denial on the part of the plaintiff. The engineer said : "I cautioned both of them to be careful; that if they let it fall, especially the sharp end that the plaintiff had, that if he let it fall, it would cut his hand off, or his fingers, whichever it would strike. That was not more than two or three minutes before the accident happened. I told [the plaintiff], when he was under the engine, to be careful and hold his end up; that if he did not, it would fall and mash his hand in some way." The fireman testified: "I cautioned him to hold his end up or it would be sure to cut his hands on the links. The links are sharp, but the eccentric is not. He said he was ready. So I took the bolt out, supposing that it would be all right and that he would hold his end, but he dropped it, and the consequence was

v 90-37

that it knocked the back of his hand against the link
and cut it." Each swore positively on this point. The
plaintiff, on the other hand, when called in rebuttal,
merely said that if the engineer or the fireman said any-
thing to him by way of caution, he did not remember
it, or did not hear it; nor was he altogether positive
that he was holding the lower blade, as he had stated
in his examination in chief.

The warning here testified to, whether sufficiently
specific or not as to the consequences of taking out the
bolt, amounted at least to a general warning that the
work was attended with danger; and it was specific
enough if the injury was caused in the manner stated
by these witnesses, that is, by the falling of the blade
*upon* the plaintiff's hand, instead of by its striking his
hand upwards.

Assuming, however, that no warning was given, it is
very doubtful whether it was negligence at all to omit
a general warning that the work was dangerous. Be-
fore an employer can be held liable for a failure to warn,
there must be something to suggest to him that a warn-
ing is necessary. If the youth or known inexperience of
the employee is such as to put the master upon notice
that the employee may not realize the risk he is called
upon to encounter, the master must of course see to it
that he is properly warned; but we do not understand
it to be the law that in the case of an adult employee,
about to undertake work which he is subject in the line
of his duty to be called on to do, the master must as-
sume that he is ignorant of ordinary dangers that may
attend the work. The plaintiff was an adult, and had
been working three or four months as a train-hand for
the defendant, and the work he was directed to do on
this occasion, though perhaps unusual for him, appears
nevertheless to have been in the line of his duty; and if
we leave out the testimony of the defendant's witnesses

as to their having warned him of the danger, and accept his own testimony as true, it does not appear that his superiors had any reason to suppose that he did not know it might be dangerous to engage in this work. He said nothing to indicate that he was unacquainted with such work or with the dangers that might attend it. The whole situation was visible to him. The part which was being removed, as well as the part he held, was under his eye; he could see the fireman taking out the bolts, and saw each bolt as it was removed, and he knew that the purpose in taking them out was to disengage and remove the part at which the fireman was working. His own end of the blade was in close proximity to other machinery, and it would seem he ought to have known that the disengaging or removal of the eccentric or eccentric "strap," to which the blade was attached, would cause his end to move, and his hand, perhaps, to come in contact with other parts of the machinery. Under this state of facts, can it be said that it was necessary, or that the defendant had reason to suppose it was necessary, to inform the plaintiff that the work in which he engaged or the position in which he was placed was dangerous? If no such warning was necessary, the charge of negligence fails, in so far as it is rested on the allegation that the plaintiff was directed to do dangerous work or was placed in a dangerous position without warning. If he saw that the bolt was being removed, it is clear that the charge of negligence fails in so far as it rests on the allegation that the plaintiff "had no notice that the fireman was about to remove the bolt." Did the negligence consist in a failure by the fireman to give notice of the precise moment when his end of the eccentric was ready to fall? Should he have said, "Look out!" or something to that effect, and was it his omission so to do that caused the plaintiff to be off his guard and to be hurt? If this was the neg-

ligence relied upon for a recovery, then the liability of
the company would depend upon whether the plaintiff
had a right to such warning in order to put him on his
guard, or whether he ought to have put and kept him-
self on guard without any special warning. Inasmuch
as what was going on was open to his own observation,
his right to recover upon this ground is at least very
doubtful. Does he rely upon the failure to warn him
that injury might result in the particular manner in
which he testifies it did,—that is, by an upward move-
ment of the end he held? When we come to inquire
whether the defendant was negligent in this respect, we
are met at the outset with much conflict and uncertainty
in the evidence as to whether the injury did result in
that manner. On this point the plaintiff himself is in-
consistent. According to his declaration, the eccentric
fell *upon* his hand; in one part of his testimony he says,
the part he held "fell on" his hand. The other wit-
nesses swear positively that it fell upon his hand, falling
downwards instead of flying upwards and striking his
hand against the machinery above. If the injury was
caused by its falling down, we do not see that he has
any right to complain. From his knowledge that he
was put there to hold it up and keep it from falling, as
well as from his knowledge of the immediate surround-
ings and the work that was going on, it seems that he
ought to have foreseen, without warning, that such a
result as this was liable to happen. But whether the
injury was caused in this way or the other, we think it
very doubtful, taking the whole of the evidence to-
gether, that the failure to warn in any respect, if indeed
there was such a failure at all, was such fault or negli-
gence as would authorize a recovery by the plaintiff. To
warrant a recovery by the plaintiff, it must distinctly ap-
pear that he was himself free from fault, and that the de-
fendant was at fault or negligent in the respect charged in

the declaration. In view, therefore, of the uncertainty of the declaration as to what was intended to be charged and relied on as negligence, and of the unsatisfactory condition of the evidence as a basis for recovery upon any theory of negligence involved, we think the ends ot justice will be promoted by sending the case back for a new trial.                              *Judgment reversed.*