## SAVANNAH, THUNDERBOLT AND ISLE OF HOPE RAILWAY *v.* WILLIAMS.

A chartered street-railroad is a railroad company within the meaning of the Civil Code, §§ 2297, 2323, and therefore is liable to one servant for injuries inflicted by the negligence of a fellow-servant.

Argued February 25, — Decided March 17, 1903.

Action for damages.    Before Judge Norwood.    City Court of Savannah.    February 6, 1902.

Williams sued the railway company for damages on account of personal injuries.    From the petition it appeared that he was one of several laborers engaged, as employees of the defendant, in hauling lumber with its cars from its power-house to its shops; and that while he was attempting, in obedience to the direction of the employee in charge of the work, to remove some of the lumber that had fallen on the railroad track, his fellow-workmen who were unloading the car threw from the car a piece of lumber which struck him, thus causing the injuries complained of.    The petition alleged that the injuries were due to negligence on their part.    There was a demurrer by the defendant, on the grounds that no cause of action was set forth, and that the petition showed that the plaintiff was injured by a fellow-servant.    The demurrer was overruled, and the defendant excepted.

*Osborne & Lawrence*, for plaintiff in error.    The term "railroad company," as used in the Civil Code, §§ 2297, 2323, does not

include a street-railway company. 29 L. R. A. 209. Under the old law a railroad company was not liable for injuries by fellow-servants. 15 *Ga.* 349. This rule was changed by act of 1856 (Acts 1855-6, p. 155). Code of 1863, §§ 2054, 2980, Code of 1873, §§ 2057, 2981, Code of 1895, §§ 2297, 2323; repealed, Acts 1869, p. 157, and re-enacted, Acts 1873, p. 24. A "railroad company" is not a street-railroad company. 95 *Ga.* 370; 112 *Ga.* 164; 61 Fed. 605, s. c. 24 L. R. A. 693; 11 L. R. A. 693; 10 L. R. A. 251; 59 Am. R. 303; 28 Minn. 373; 2 Duvall, 178; 65 Iowa, 742; 13 Tex. Civ. App. 247, 35 S. W. 826; 88 Tex. 262; 65 Minn. 387, 67 N. W. 1006; 88 Fed. 588; A. D. Dabney in Va. Law. Reg., Aug. 1902, p. 252. The system of our law is to separate railroad from street-railroad legislation, so that the latter is not intended unless expressly included. Civil Code, §§ 5780–82, 2158, 2180–84, 2199; 94 *Ga.* 145. And see sections referring to connecting carriers, separation of the races, etc. Street-railways are intra-mural, are merely carriers of passengers, and their occupation and the purpose of their organization are so different from those of railroads as distinctly to differentiate them. 95 *Ga.* 370; 111 *Ga.* 679, and cit.; 112 *Ga.* 164. The act of 1856 applies only to employees of railroad companies, and not to employees of other persons operating railroads, and, being in derogation of common-law, should be construed strictly. 55 *Ga.* 481; 83 *Ga.* 345; 93 *Ga.* 53; 98 *Ga.* 306. This court has never decided that section 2321 related to street-railroads except in their capacity of carriers of passengers. 55 *Ga.* 126; 61 *Ga.* 215; 76 *Ga.* 311; 79 *Ga.* 305; 98 *Ga.* 652. The presumption declared in Civil Code, § 2321, existed at common law against street-railroad companies as well as other carriers of passengers. 79 *Ga.* 305; 95 *Ga.* 814; Booth, Street Railways, § 361; Cooley, Torts, * 662–4; 11 Wall. 129–33. Section 2321 came from the common law, and not from the act of 1856, from which sections 2297, 2323 were taken, and there is no analogy between the common-law presumption and the liability imposed by that act.

*Twiggs & Oliver*, contra, cited 55 *Ga.* 126; 61 *Ga.* 215; 76 *Ga.* 311; 79 *Ga.* 305; 98 *Ga.* 652; 101 *Ga.* 407; 10 Bush, 231; 54 *Ga.* 509; 69 *Ga.* 204; 73 *Ga.* 499; 86 *Ga.* 320; 90 *Ga.* 571; 95 *Ga.* 301; incorporating acts, March 21, 1866 (Acts, p. 213); December 20, 1866 (Acts, p. 130); Acts 1874, p. 304.

LAMAR, J.   The sole question in this case is whether a street-railroad company is a "railroad company" within the meaning of the Civil Code, §§ 2297, 2323, making railroad companies liable to one servant for injuries inflicted by a fellow-servant.   The importance of the question, the fact that it has never been directly decided by this court, that the decisions outside of this State are in some conflict, and that the courts of Texas and Minnesota have reached a conclusion different from ours, make it proper to refer to the authorities at some length.   We think the conflict is more apparent than real, and that a close examination will show that there was always present some special reason for holding that a street-railroad was not a railroad within the meaning of the statute under consideration.

A statute giving a laborer a lien on railroads does not apply to a street-railroad, since the fee of the street on which the track is laid is in the city.   Front Street Cable Road *v.* Johnson (Wash.), 11 L. R. A. 693.   Street-railroads are not within the jurisdiction of the California railroad commission.   The court reached this conclusion on general principles, though the act itself was limited to companies owning railroads " other than street-railroads."   Board R. Comrs. *v.* Market St. Ry. Co., 54 C. L. J. 268.   A horse-railroad is not a railroad within the meaning of a statute which provides that every *engine* or train shall be brought to a full stop before crossing a railroad.   Taft, J., in Byrne *v.* Kansas City R. Co., 61 Fed. Rep. 605.   A statute referring to any railroad corporation whose line is wholly or partly within Montana, or reaches the boundary thereof, and giving a judgment for injury to the person a lien superior to a mortgage on the property, evidently refers to lines extending for long distances, and does not include street-railroads.   Mass. Loan & Trust Co. *v.* Hamilton, 88 Fed. Rep. 588.   The franchise to use the streets being granted by legislative or municipal authority, and the tracks being laid on established streets and usually restricted to the bounds of the city, statutes providing for condemnation of rights of way have little or no reference to street-railways using electricity or horse-power.   Thomson-Houston Electric Co. *v.* Simon, 10 L. R. A. 251.   Compare South & North R. Co. *v.* Highland Ave. Co. (Ala.) 24 So. Rep. 114.   In Kentucky a street-railroad is said to be, in a technical and popular sense, as different from an ordinary railroad as a road and a street, or as a bridge and

a railroad-bridge.　Louisville & P. R. Co. v. Louisville City R. Co., 2 Duvall, 175.　In Riley v. Galveston City R. Co., 13 Tex. Civ. App. 247, it was held that the act of 1893, defining fellow-servants, while applicable to any railroad company, does not include street-railways, though the question had been expressly left open by the Supreme Court of Texas in Austin Rapid Tr. Co. v. Grothe, 88 Tex. 262.

In Funk v. St. Paul Ry. (Wis.), 29 L. R. A. 208, it was said that a statute making every railroad company liable for injuries inflicted by reason of the negligence of a fellow-servant did not include street-railroads operated by cable, the court holding that it could recur to the history of the time when the statute was enacted, " and when the words of a statute are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the object and remedy in view. . .　It is a matter of common knowledge that street-cars operated by cable or electricity are more readily managed than those operated by steam, where long passenger and freight-trains with their weight and momentum are not so easily controlled.　A street-car is generally run separately, rarely with more than two or three coupled together. . .　They do not run so rapidly, their movements are easily and quickly checked. . . Nor do street-railways carry freight. . .　Especially is the danger in coupling their cars entirely absent. . .　The words in the law of 1887 make a railroad corporation operating the railroad in this State liable for damages 'when sustained within this State.'　They undoubtedly aim at the railroads operated by steam where their lines extend beyond the jurisdiction of the State.　It is true these restrictive words would include railroads operated by steam wholly within the State, but they were inserted to prevent the bringing of suit where the injury was sustained upon railroads out of this State but where the lines of the same railroad came within the boundary of our own State.　Hence the words ' when sustained within this State' evidently referred to railroads operated by locomotives, and it was such railroads the legislature had in contemplation when this term was used. . .　Through our territorial and State legislation the term 'railroad' has acquired a definite and well-understood meaning, and it has never been understood to include street-railroads."　In the concurring opinion of Mitchell, J.,

he concludes that "railroads" means steam-railroads only, because, "In all legislation of this State I have found no act, . . which has reference to street-railroads, in which the word 'street' was not prefixed." See also State *v.* Duluth St. R. Co., 57 L. R. A. 63. This reasoning is not applicable here, because in Georgia the contrary is true. The word "railroad" includes street-railroad, unless the context shows that a particular kind of railroad was intended.

The foregoing citations are the strongest we find in support of the contention of the plaintiff in error. Opposed to them are cases from New York, Pennsylvania, Massachusetts, Tennessee, Alabama, and Kentucky. The New York general railroad law of 1850 was held to include horse-railroads, though the act referred to other motive power. In re Washington Street Ry., 115 N. Y. 442. A street-railroad using dummy engines is a railroad within the meaning of the Alabama statute requiring trains to stop within 100 feet of a track crossing. Birmingham Ry. Co. *v.* Jacobs, 92 Ala. 202 (Stone and Clopton, JJ., dissenting). A dummy line, whether operated within or without the limits of a municipality, and although exclusively engaged in carrying passengers, is a railroad within the meaning of the statutes prescribing certain precautions for the prevention of accidents on railroads. Lurton, J., in Katzenberger *v.* Lawo, 90 Tenn. 235. Street-railroads are within the Pennsylvania act relating to merger. Hestonville *v.* Phila. Ry., 8 Pa. St. 210. A horse-railroad is within the exception of the Massachusetts statute providing that insolvent proceedings may be instituted against any corporation except railroad and banking companies, though at the time of the passage of that statute no company had been established in that State for the purpose of laying rails on the public highways and running horse-cars thereon. Central Bank *v.* Worcester Horse R. Co., 13 Allen, 105. The Kentucky statute making railroad companies liable for negligence is applicable to any kind of railroad, whether impelled by horse or steam-power. Johnson *v.* Louisville R. Co., 10 Bush, 231. The similarity of urban and intra-urban railroads to the ordinary steam railroad, the rapidity of their movements, the enlargement of their cars, the marvelous increase in their business, have compelled the courts to recognize, if not the identity, at least the close resemblance between the two; and while the reasoning may not in all respects support our contention, it was held in Stillwater & M. St.

Ry. *v.* Boston & Me. R. Co. (N. Y.) 64 N. E. 511, that the act of 1850, re-enacted later in 1890, which conferred on a steam-railroad company the right to cross or unite its railroad with any other railroad before constructed, and further providing that every railroad company whose road was intersected by any new railroad should unite with such in having the necessary connections with the requisite facilities, applied to the intersection and connection of a street-railroad operated by electricity with a railroad operated by steam.     This decision was put on the language of the act, but it refers to the ruling of the lower court, which was somewhat similar to the contention of the plaintiff in error here, denying that street-surface railways could be recognized as an integral part of the great system of steam-railroads.

After this citation of foreign authorities, it will be proper to examine the state of our own decisions on the subject.     We think the constitution, statutes, and decisions of this State recognize that the word "railroad" is generic, and includes street-railroads, narrow-gauge roads, horse-car companies, dummy-lines, and street-railroads operated by electricity.     Whether a particular statute applies to any one of these various forms of railroads is to be determined from the language of the statute, from the context, or from the intent of the lawmakers.     See Gyger *v.* Phila. City Ry., 136 Pa. St. 96.     Street-railroads were not within the general corporation act of 1881 (*Dieter* v. *Estill*, 95 *Ga.* 370), because the provisions requiring the articles of association to state the places and the counties to and through which it was to run, fixing the right of way at 200 feet, and authorizing the maintenance and construction of docks, stations, etc., indicate that the legislature was dealing with railroads other than street-railroads.     So in *Savannah Ry.* v. *Savannah,* 112 *Ga.* 164, a street-railway company doing a city business was held to be as much subject to city taxation as an omnibus company, though an ordinary steam-railroad operating between different places would not be subject to such a tax.     They were both railroads, though one could be taxed on intra-city business, while the other was exempt from municipal tax on intra-city business.     The terms of the act providing for county taxation of railroads show that it was evidently intended to apply to those roads running from one county to another, and not to those doing business in and near a single city.     Pol. Code,

§§ 784–789. The Civil Code, § 2199, recognizes that street-railroad companies would have been subject to the jurisdiction of the railroad commission had they not been expressly excepted from the operation of that law; and Civil Code, § 2180, providing how street-railroads may be incorporated, treats them as in most respects identical with ordinary railroads, by conferring on them all of the powers of the ordinary railroad except such as are not necessary and proper for companies whose tracks are laid on the streets of a city. If they are not railroads, then there are few, if any, that have been duly chartered; for not only under the constitution of 1877, but prior thereto, while the legislature could incorporate railroads, their charters ought to have been granted by the courts if these companies are not railroads. Civil Code, § 5780; Const. 1868, Code of 1873, § 5068; Cobb's Dig. 424, 431, 542. In the Civil Code, § 5782, the convention was protecting municipalities, not defining the differences between various species of railroads.

The Civil Code, § 2334, provides that all railroad companies shall be sued in the county where the cause of action originated; and while the point does not appear to have been distinctly made, its provisions were, in *Devereux* v. *Atlanta Railway and Power Co.*, 111 *Ga.* 855, held to apply to the case of a street-railroad. In *Price* v. *State*, 74 *Ga.* 378, the act of 1837 (Penal Code, § 520), providing a penalty for obstructing a railroad, was held to apply to a street-railroad operated by horse-power, though no such species of railroad existed when the act was passed. In *Perry* v. *Macon Consolidated Street Railroad Co.*, 101 *Ga.* 407, a minor, not a passenger, was injured, and the court applied the statutory presumption against railroad companies, citing Civil Code, § 2321. "The presumption against a railroad company where an injury is shown to have been occasioned by the running of its cars, applies as well to street-railroad companies as to others." *Electric Ry. Co.* v. *Carson*, 98 *Ga.* 654; *Augusta R. Co.* v. *Renz*, 55 *Ga.* 126, citing Civil Code, § 2321. Compare *City Street Ry.* v. *Findley*, 76 *Ga.* 311; *Augusta R. Co.* v. *Randall*, 79 *Ga.* 305; *Holly* v. *Atlanta Street R.*, 61 *Ga.* 215, where the persons injured were passengers and the plaintiff in error claimed that the presumption was from common law, and not from the act of 1856. But even if that were so, it could by re-enactment have been made a statutory presumption. Certainly, even as to passengers, it is more extensive

than it was at common law.     But the point is that the court applied such statutory presumption to street-railroads, and cited a section which on its face refers only to railroads.

The contention of the plaintiff in error is that if railroad can mean street-railroad, Civil Code, § 2297, does not apply to street-railroads, because the abrogation of the fellow-servant rule is therein shown to have been because railroad companies "necessarily have many .employees who can not possibly control those who should exercise care and diligence in the running of trains." It claims that this language shows that the legislature was considering a state of affairs applicable only to steam lines.     This reason, given in section 2297, does not appear in the act of 1856, but was apparently codified from Judge Stephens' opinion in *Cooper* v. *Mullins*, 30 *Ga.* 146. The rule and the act were codified in somewhat different language, and without any reason therefor being stated, in the Civil Code, § 2323.     But even if the act of 1856 had stated a specific cause for its adoption, the operation of the statute need not have been co-extensive with the reason given.     The maxim, "cessante ratione cessat ipsa lex," is of great assistance in construing doubtful, impossible, and unreasonable provisions.     But it should not override the express language of a statute.     An act may originate from a desire to remedy a particular evil, and yet the language·may be so framed as to extend its provisions into a territory where the special evil does not exist.     So, too, the language may be so framed as to prevent its application in a territory where the same evil does exist. Pol. Code, § 4, par. 9.     This is well illustrated in this very section changing the doctrine of fellow-servant; for this court, in holding that a receiver was not a railroad company, and therefore not within the language of section 2323 (3036), said, "It would be uncandid to deny that, to a certain extent, the same reasons of public policy and private justice which call for the protection of operatives on a railroad when the owners or lessees are in possession apply when receivers are in possession," etc.     *Henderson* v. *Walker*, 55 *Ga.* 483; *Robinson* v. *Huidekoper*, 98 *Ga.* 306; *Ellington* v. *Beaver Dam Co.*, 93 *Ga.* 53.     Conversely the section has been construed to apply to those working on bridges and in railroad machine-shops, though these cases were not within the evil sought to be corrected. *Thompson* v. *Central R. Co.*, 54 *Ga.* 509; *Central R. Co.* v. *Gleason*, 69 *Ga.* 203; *Georgia R. Co.* v. *Ivey*, 73 *Ga.* 499; *Georgia R. Co.*

v. *Brown,* 86 *Ga.* 320 ; *Georgia R. Co.* v. *Miller,* 90, *Ga.* 571; *Georgia R. Co.* v. *Hicks,* 95 *Ga.* 301.    But these plaintiffs were servants of a railroad company, and within the letter of the law, and therefore entitled to its provisions.    The same literalism that denied the benefit of the statute to the employees of a receiver, when the reason and not the letter applied, gave it to bridge and planing-machine employees of a railroad, when the reason did not apply but the letter did.    These bridge and planing-machine cases are within the letter of the statute, though beyond the evil that may have prompted the adoption of the act.

So while street-railroads may not then have been so dangerous, they were still railroad companies and within the purview of the law.    They are not outside of the policy underlying the statute. They had tracks, and had or might have had bridges.    The utmost diligence on the part of the driver might not have enabled him to guard against the negligence of other fellow-servants who were charged with the duty of keeping the track in repair.    While there might not be as many injuries occasioned by the negligence of a fellow-servant in street-car service, yet the language of the statute was broad enough to take in these few instances as they arose.    If the legislature used language which was broad enough to include street-railroads, and if to some extent they were within its spirit, even though not as much so as steam-railroads, the courts have no right to pare down its meaning and say that the law does not apply to the employees of a street-railroad.    The word "railroad" in 1856 was generic, as it is now, and broad enough to take in the new species as they arose from time to time.    There may not have been any street-railroads in Georgia in 1856, but the legislature must have known that horse-power had been the first motive power used in hauling cars on rails, and was even then being used either in this State or elsewhere in hauling single cars through the streets of cities.    The fact that a reason was given by the codifiers, in inserting the act of 1856 in section 2297, could not have been intended to announce a variable rule which would make the company liable in cases where an employee separated from his fellow-servants was injured, and not liable when he was on the same engine and injured; or apply where the injury occurred by the movement of a heavy train with great momentum, and not apply where only a single car was being slowly moved through a freight

yard; or apply where the cars were pulled by steam, and not to the same companies whose cars were pulled by horses. While danger incident to the operation of trains was the moving cause for the enactment of the law, it has frequently been held that the language applies to injuries inflicted by fellow-servants whether connected with the running of trains or not. *Georgia R. Co.* v. *Miller*, 90 *Ga.* 571. But when we consider the development of the street-railroad business; the fact that in many instances they use steam; that they use a motive power capable of generating a speed greater than that of steam; that the act of 1856 was inserted in the Code of 1863, and in the Code of 1868; that this fellow-servant law was inadvertently repealed by the act of 1869 (Acts 1869, p. 157), and then re-enacted in 1873 (Acts 1873, p. 24); that at the time of such re-enactment there were street-railroads, some using horse-power, and others using horse and steam-power; and when we further recall that these code sections were again re-enacted in 1895, at a time when there were very many horse-railroads, narrow-gauge roads, and electric roads, and that in 1885, before the adoption of the Code of 1895, this court had held that a street-railroad was within the meaning of the word "railroad" as used in the act of 1837 (Penal Code, § 520), and in 1875, in *Augusta R. Co.* v. *Renz*, 55 *Ga.* 127, applied to them the law as to presumptions against railroads, the conclusion is irresistible that the legislature was satisfied with the construction which had been placed on the meaning of this word by the courts, and willing to re-enact these sections in the light of the express or implied definition of the word "railroad." Not only the language of the code, but the principle of stare decisis requires us to hold that a street-railroad is liable for injuries inflicted upon an employee by reason of the negligence of a fellow-servant. *Judgment affirmed. By five Justices.*