# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION

### JACKSON, APRIL TERM, 1916.

*(Continued from Vol. 135.)*

ILLINOIS CENT. R. Co. *v.* HUDSON.*

### (*Jackson.* April Term, 1916.)

1 **EMINENT DOMAIN. Street railway and dummy line in street.**
A street railway is but an improved use of the street, and is not an additional burden upon the ultimate fee, but a dummy line, drawn by a steam engine, is an additional burden, for which its owner is entitled to compensation. (*Post, p.* 10.)

Acts cited and construed: Acts 1871, ch. 46.

Cases cited and approved: Memphis St. L. Ry. Co. v. Cavell, 135 Tenn., 462; Johnson v. So. Pac. R. R. Co., 196 U. S., 1.

Case cited and distinguished: Sams v. St. L. & M. R. R. Co., 174 Mo., 53.

2. **RAILROADS. Dummy line. "Railroad."**
A dummy line, drawn by a steam engine, for transportation of passengers, whether operated within or without a municipality, is a "railroad" within the meaning of statutes providing precautions for the prevention of accidents on railroads. (*Post, pp.* 10-19).

---

*Upon the question of right of Railroad Company to compensation for the crossing of its tracks, where it intersects a street or highway, by an electric road, see notes in 29 L. R. A., 485; 13 L. R. A. (N. S.), 916; L. R. A. 1915D, 843.

For authorities discussing the question as to railroads of various kinds as additional burdens, see notes in 4 L. R. A. (N S.), 202; 36 L. R. A. (N. S.), 709; 40 L. R. A. (N. S.), 254; 17 L. R. A., 477.

136 Tenn.]                    (1)

Ill. Cent. R. Co. v. Hudson.

Acts cited and construed: Acts 1877, ch. 114; Acts 1899, ch. 100.

Cases cited and approved: Smith v. St. Railroad, 87 Tenn., 626; Telephone Co. v. Electric Co., 93 Tenn., 492; Railroad Co. v. Doyle, 88 Tenn., 747; Katzenberger v. Lawo, 90 Tenn., 235; Freiday v. Sioux City R. T. Co., 92 Iowa, 191; Stanley v. Davenport, 50 Iowa, 463; Vail v. Railroad, 147 N. Y., 377; Ferguson v. Sherman, 116 Cal., 169; Electric Co. v. Simon, 20 Or., 60; Spokane & I. R. R. R. Co. v. Campbell, 217 Fed., 518; Diebold v. Ky. Traction Co., 117 Ky., 146; Roy v. East St. Louis & Suburban Ry. Co., 119 Ill. App., 313; Hannah v. Met. St. Ry. Co., 81 Mo. App. 78; Railroad v. A. & C. St. Ry. Co., 96 Ky., 347; Birmingham Mineral R. Co. v. Jacobs, 92 Ala., 187; L. & N. R. R. Co. v Anchors, 114 Ala, 492; Railroad v. Joiner, 120 Ga., 905.

Cases cited and distinguished: Byrne v. Railroad, 61 Fed., 605; Funk v. St. Paul City R. Co., 61 Minn., 435; Mass. Loan & Trust Co. v. Hamilton, 88 Fed., 588; Savannah, etc., R. R. Co. v. Williams, 117 Ga., 414.

Laws cited and construed: Laws 1875, ch. 142.

3. **RAILROADS. Stop statute. Application to street railway crossing.**

In view of the general incorporation law (Laws 1875, chapter 142) in its treatment of street railways and commercial railroads, and Laws 1877, chapter 114, and Laws 1890, chapter 100, amending Acts 1871, chapter 46, the railroad stop statute making it a misdemeanor for any railroad employee to cross the track of any other railroad with an engine or train without first stopping, etc., such statute has no application to a crossing between a commercial steam railroad and a street car line operated in and about a municipality, and it is no violation of the statute for an employee of the railroad to cross the street car track without stopping his train. (*Post*, *pp*. 10-19.)

4. **RAILROADS. "Interurban railroad."**

A street railway, operating within a municipality, and to and through a thickly populated suburb thereof, on the same

kind of rails with the same speed and momentum, the same cars and power, etc., as it used within the city, was not engaged in operating an "interurban railroad" between the suburb and the city. (*Post pp.* 19-20.)

5. RAILROADS. Stop statute. Application.

Laws 1907, chapter 433, declaring and making more specific the powers and duties of interurban railroads, does not enlarge the application of Laws 1871, chapter 46, the stop statute making it a misdemeanor for a railroad employee to cross the track of another road with an engine or train without first stopping, so as to make it apply to a crossing between a railroad and a street car line in the suburbs of a city. (*Post, pp.* 20-22.)

Cases cited and approved: Hogan v. Railroad Co., 131 Tenn., 244; Roper v. Memphis St. Ry. Co., 188 S. W., 588.

---

FROM SHELBY.

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —A. B. PITTMAN, Judge.

BELL, TERRY & BELL, for plaintiff in error.

SIVLEY & EVANS and BURCH & MINOR, for defendant in error.

MR. HOLMES, Special Judge, delivered the opinion of the court.

Bettie Hudson was the plaintiff below and brought her suit at law against the Memphis Street Railway

Company and the Illinois Central Railroad Company for personal injuries alleged to have been sustained by reason of a collision between a freight train and a street car, upon which she was a passenger, the place of the alleged injury being a mile or more east of the corporate limits of the city of Memphis, at the crossing of the Illinois Central Railroad and the Raleigh Springs line of the street car track of the Memphis Street Railway Company, in the suburban town of Binghampton. The plaintiff charges that the street railway company was negligent, in that it caused its street car upon which the plaintiff was a passenger to be driven across the track of the railroad company in front of an approaching train, which ran into and collided with it, and thereby injured the plaintiff. She charges that the defendant, Illinois Central Railroad Company, was negligent, in that it did not bring its train of cars to a stop before crossing the street railway, and also charges a violation by the Illinois Central Railroad Company of certain statutory precautions, and also charges common-law negligence. To this declaration there were pleas of not guilty, and other pleas which raised questions not now in issue.

In the trial court, after all of the evidence was in, the court sustained a motion by the Illinois Central Railroad Company for a peremptory instruction, whereupon the plaintiff took a nonsuit as to the Memphis Street Railway Company and prosecuted her appeal to the court of civil appeals. The court

of civil appeals reversed the trial court, holding that the peremptory instruction ought not to have been given; because it was the duty of the railroad company to stop its engine and train of cars before crossing the track of the Memphis Street Railway Company under and by virtue of the provisions of chapter 46 of the Act of 1871, which is commonly spoken of as the "Stop Statute," the provisions of which are as follows:

"An act for the protection of persons and property upon railroads.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that it shall be a misdemeanor for the engineer or other employee of any railroad company to cross the track of any other railroad in this state with an engine or train without first coming to a full stop.

"Section 2. Be it further enacted, that a violation of the first section of this act shall subject the offender to indictment or presentment in any court having jurisdiction thereof, and upon conviction he shall be fined not less (than) fifty (50) dollars, nor more than one hundred (100) dollars, and imprisoned in the county jail not less than one month nor more than six months, or both at the discretion of the jury trying the same."

The case is brought before us by the Illinois Central Railroad Company on petition for *certiorari*. We will deal in this opinion only with the application of the stop statute.

The record shows that the Memphis Street Railway Company owns and operates the Raleigh Springs line as an integral part of its street railway system in the city of Memphis and suburbs; that it is using upon this particular line the same kind of cars and equipment which are used by it on other lines over the streets of Memphis; and that the street cars operated by it over this line go to and from the heart of the city of Memphis, are operated by electric motors, and are commonly known as "trolley cars." The cars on the Raleigh line ran over the streets of Memphis just as other street cars did, were operated on the same rails and by the same wires and by the same power and by like crews as other street railway lines. So far as we are able to discover, the only difference between a Raleigh Springs car and other street cars operated exclusively within the city limits, was merely the marking on the front to show destination. The Raleigh Springs car did not stop at uptown points in the city of Memphis to let off passengers on its outgoing trips, but it did stop at any and all street corners to let off passengers on its incoming trips. On its outgoing trips, after reaching Evergreen avenue, in the eastern part of the city, it stopped at any street crossing to let off or take on passengers. The street car company did no freight traffic on the Raleigh line, but ran only street cars over this line, and it seems clear from the record that it was doing a street car

Ill. Cent. R. Co. v. Hudson.

business on this line at least as far out as the Binghampton crossing.

Just before nightfall, in September, 1914, one of the Raleigh Springs cars, with a trailer attached, and loaded with passengers approached the Binghampton crossing, of the Illinois Central Railroad Company's belt line.    The belt line has two tracks, running north and south at this place, the west track being for trains going south and the east track being for trains going north.    The belt line skirts the city of Memphis, and is used largely for the handling of heavy freight trains by the railroad company. On the evening of this accident, the motorman, with his street car going east, reached the Binghampton crossing, stopped his car, as was his custom.    There was a long freight train passing south over the west track of the belt line.    The conductor on the street car, as was his custom, alighted from the street car and waited for the freight train going south to pass over the crossing, and as soon as it had done so, he stepped upon the track, his purpose being to ascertain if the way was clear and the crossing safe, and then flagged to the motorman on the street car to proceed upon and across the railroad tracks.    Just at this time there was a long freight train approaching from the south, going north on the east track of the belt line.    The north-going train was not observed by the street car conductor, and before the motorman could get across the east track with his street car, the engine of the freight train struck the trailer, injuring

and killing many people. The plaintiff was a passenger on the street car. The train going south left a cloud of smoke and dust in its trail. The record shows that the tracks at that place were straight, and the headlight on the engine of the freight train was lit. We are unable to say why the street car conductor did not see the freight train approaching from the south. The dust and smoke of the freight train going south may have somewhat obstructed his view. The train going south was operated on a regular schedule, and frequently met this same street car late in the afternoon. The train going north was not operated on a regular schedule, and the street car was not in the habit of meeting the north-bound train at this point. It may be that the street car conductor was relying, at this particular time, upon finding the situation at this crossing as he usually found it, and therefore did not take the pains and trouble to look carefully to see whether or not a train was coming from the south.

There have been other cases before this court growing out of this collision, and the facts in each of these cases are substantially the same, and for a more detailed statement of the facts we make reference to the opinion of this court in the case of *Memphis Street Railway Company* v. *Cavell*, 135 Tenn., 462, 187 S. W., 179. We deem it unnecessary to go further into the bloody details of the collision.

It is insisted that the court can be aided in the determination of the question now before us by re-

sorting to the original charter granted to the Memphis & Raleigh Springs Railroad Company on August 9, 1894, which company, originally owned the Raleigh line. In 1894, the Citizens' Street Railway Company (then operating the street railway system of Memphis) leased the property and operating franchises of the Memphis & Raleigh Springs Railroad Company. The Memphis Street Railway Company, successor to the Citizens' Street Railway Company, purchased said lease in 1897. In 1899 the Memphis & Raleigh Springs Railroad Company confirmed said lease and conveyed by deed to the Memphis Street Railway Company, conveying to it the very line upon which the Memphis Street Railway Company had obtained a charter for the purpose of operating a street railway. We find little help in arriving at the application and meaning of the stop statute by resorting to the charter provisions of the Street Railway Company and the Memphis & Raleigh Springs Railroad Company. At most it cannot be contended that the operation and method of operation by another corporation would be binding upon the Memphis Street Railway Company as to what shall be and is operated by it upon said line. If it is beyond the corporate power of the street car company to operate the Raleigh line, as operated by it, then we cannot see how that would lessen the statutory duty, if such duty existed, of another and different corporation. It is said by the Missouri court

in the case of *Sams v. St. Louis & M. R. R. Co.,* 174
Mo., 53, 73 S. W., 686, 61 L. R. A., 475:

"The business in which the corporation was engaged may have been such as its charter did not authorize. Still, when the attempt is made to bring the act within the scope of the statute, the question is not what was the company authorized to do, but what in fact was it doing?"

The Memphis Street Railway Company at the time and place of this collison, was carrying on the business of a street car company.

It is insisted by counsel for the railroad company that the stop statute is penal in its nature, and should have a strict construction, but we are not willing to rest upon the mere use of words which might have one meaning in 1871 and another and different meaning at this time. We think statutes of this kind are remedial as well as penal, and it would seem to be the proper course to search out and follow the true intent of the legislature, and to adopt that sense of the words used which will promote the legislative policy, being careful that the statute should not be enlarged by implication. *Johnson* v. *So. Pacific R. R.,* 196 U. S., 1, 25 Sup. Ct., 158, 49 L. Ed., 363.

We think, by referring to other Tennessee statutes, *in pari materia,* it will be found that the legislature did not have in mind the application of the stop statute to street railways. The general incorporation law of 1875 (Laws 1875, chapter, 142), treats street railways as one class and commercial railroads

Ill. Cent. R. Co. v. Hudson.

as another class, and a different form of charter was prescribed for each. Chapter 114 of the Acts of 1877 amends the act of 1871 by restricting its operation so that it does not apply to the longer road, when two roads which cross each other are under the same management. Manifestly the legislature did not then have in mind street railroads. Chapter 100 of the acts of 1899 amends the stop statute (this at a time when electric street cars were in use) by providing that the Act of 1871 does not apply "where such other railroad is   disconnected by interlocking switches placed on both railroads."

It is contended that the situation at the Binghampton crossing is within the mischief of the statute. We think the statute was intended to  prevent  trains not easily and quickly stopped from colliding with each other at crossings. Electric street cars, which stop quickly and are easily and quickly started, could not have been intended by the legislature to have been put on a parity with a mogul engine, or a long and heavy loaded freight or express or passenger train of cars. There exists a danger to persons and property upon railroads by reason of one railroad crossing another, each having rapidly moving trains, both having weight and great momentum, each approaching a place of contact in such a manner as not to be able to stop when a collision becomes imminent. It is the danger to persons and property occasioned by the inability of the engineer or other employee to stop his engine or train by reason of its weight, mo-

mentum, and character of traffic handled, when the two engines or trains are rapidly moving towards a common meeting place, at such a rate of speed that neither is able to stop when coming close enough to the crossing to see the other. Hence the necessity of the statute, which provided a remedy for this mischief, without regard to whether the engineer upon each train was prudently operating his train or not.

The real purpose and spirit of the statute is not so much to punish an offending engineer as it was to prevent engineers and trainmen, when using their eyes and ears and all of the safety appliances available, from running their trains or engines together at a crossing. It was not the purpose of the statute to guard against the negligence of a street car conductor who flagged his motorman to come on the track of a railroad in front of a fast-moving freight train.

Suppose the crossing in the instant case had been that of two street railways, would the motorman on the other street car, if he had failed to stop his car before crossing the Raleigh line, have been guilty of a violation of the statute? He might be guilty of negligence, but not a violation of the statute. Of course the statute must be reciprocal. It cannot apply to the one line without applying to the other.

Is it not fair to assume that the legislature knew of the danger which would exist at crossings like the Binghampton crossing, and therefore knew that the

street car company would provide suitable rules and regulations for crossings, and would do just what the street car company has done at this particular crossing? that is, give the right of way to the railroad. The legislature knew of the impracticability of the application of the statute where parallel lines of a street railroad are crossed by a commercial railroad, and that there might be within or near the city limits of any large city two or three parallel street car lines upon which a long train of eighty or ninety cars (such as the train of the railroad was in the instant case) at one time might be crossing the tracks of the street railway. If the legislature intended the statute to apply to street railways, then before the days of the subway it would have been practically impossible to operate a train in or near the city limits of any large city.

We have made a thorough and exhaustive examination of the authorities. This is the first time our statute has been before a court of appellate jurisdiction, except in the case of *Byrne* v. *Kansas City, Ft. Scott & Memphis R .R. Co.,* 61 Fed., 605, 9 C. C. A., 666, 24 L. R. A., 693. Judge Taft delivered the opinion of the court, and, among other things he said:

"The court below was of the opinion that section 1304 [stop statute] did require the engine to stop before crossing a street railway. We are unable to concur in this view. The evidence is that this was a street railway, from which we infer, in the absence

of evidence to the contrary, that it was a horse railway.''

It seems to be well settled in this state that a street railroad is but an improved use of the street, and that it is not an additional burden upon the ultimate fee. *Smith v. Street Railroad,* 87 Tenn., 626, 11 S. W., 709; *Telephone Co.* v. *Electric Co.,* 93 Tenn., 492, 29 S. W., 104. However, a dummy line is an additional burden upon the ultimate fee in the road or street, for which the owner of that fee is entitled to compensation, as for the taking of his property for a public use. *Railroad Co.* v. *Doyle,* 88 Tenn., 747, 13 S. W., 936, 9 L. R. A., 100, 17 Am. St. Rep., 933. A dummy line drawn by a steam engine for transportation of passengers, whether operated within or without the limits of a municipality, is a railroad within the meanng of the statutes which provide certain precautions for the prevention of accidents on railroads. *Katzenberger* v. *Lawo,* 90 Tenn., 235, 16 S. W., 611, 13 L. R. A., 185, 25 Am. St. Rep., 681.

In the *Doyle Case,* supra, the court expressly distinguishes between a dummy railroad operated by steam and an ordinary street car, the motive power of which is horses, and classifies the dummy railroad with commercial railways. See, also, section 1131, Elliott on Railroads.

It was said by the *Minnesota Supreme Court in Funk* v. *St. Paul City R. Co.,* 61 Minn., 435, 63 N. W., 1099, 29 L. R. A., 210, 52 Am. St. Rep., 608, that a statute making a railroad liable for injury by rea-

son of the negligence of a fellow servant would not apply to a street railway. The court said:

"It is a matter of common knowledge that street cars operated by cable or electricity are more readily managed than those operated by steam, where long passenger and freight trains, with their weight and momentum, are not so easily controlled. A street car is generally run separately, rarely with more than two or three coupled together, and there is but little danger of collision. They do not run so rapidly, their movements are easily and quickly checked, and the roadbeds are constructed upon level or graded streets, without deep cuts, and generally lighted."

See, also, *Freiday* v. *Sioux City R. T. Co.*, 92 Iowa, 191, 60 N. W., 656, 26 L. R. A., 246; *Stanley* v. *Davenport*, 54 Iowa, 463, 2 N. W., 1064, 6 N. W., 706, 37 Am. Rep., 216.

In *Massachusetts Loan & Trust Company* v. *Hamilton, etc.*, 88 Fed., 588, 32 C. C. A., 46, the court held to the same effect, and, among other things, said:

"These authorities show the necessity that exists for the courts, in all cases, to look carefully to the statute itself, in connection with the history of the times and the contemporaneous legislation, in order to discover in what sense the word 'railroad' is used."

In *Vail* v. *Broadway R. R. Co.*, 147 N. Y., 377, 42 N. E., 4, 30 L. A. R., 626, the words "on any railroad," as used in a statute relieving railroad companies for liability to a passenger injured while rid-

ing on the platform of a car, had no application to street railways.

It is held that an electric street railway company is not a "railroad" corporation within the meaning of the exemption of the stockholders of the railroad corporation from individual liability equal to the amount of their stock. *Ferguson* v. *Sherman,* 116 Cal., 169, 47 Pac., 1023, 37 L. R. A., 622.

It was held that a statute which authorizes "any railway" to appropriate land for a right of way did not include street railroad companies, whether propelled by horse power or electricity, such railroads not being engaged in the business of carrying passengers and freight, and not operating trunk lines. *Thomson-Houston Electric Co.* v. *Simon,* 20 Or., 60, 25 Pac. 147, 10 L. R. A., 254, 23 Am. St. Rep., 86.

It is suggested that the authorities are in hopeless conflict, but this conflict is more apparent than real. The real difference in the authorities does not lie so much in the question of principle announced as it does in the difference in the various statutes, and legislative policies. The word "railroad" may mean one thing in a statute of one class, and the same word have quite another and different meaning when used in another statute intended to accomplish a different purpose. If the various decisions are carefully read with this thought in mind, it will be seen that the authorities are not in such hopeless conflict.

Upon an examination of cases relied upon by counsel for the street railway company, and also by coun-

sel for the plaintiff, it will be found that those cases may be differentiated from the case at bar upon one of several grounds; either upon a difference in the verbiage of the statute, or upon the character of operation and traffic, or upon a different legislative policy, or purpose. We will illustrate this difference by referring first to the case of *Spokane & I. E. R. R. Co.* v. *Campbell,* 217 Fed., 518, 133 C. C. A., 370. The court in this case held that the electric railway was subject to the Safety Appliance Act of Congress. It will be noted that the act of Congress is much broader than the statute before us. It speaks of "all trains, locomotives, tenders, cars, and similar vehicles" used on any railroad engaged in interstate commerce. This case also illustrates the different "legislative purpose," above referred to, as the court in this case said that the broad purpose of the legislature applies as completely to one kind of railroad as to the other. The electric railroad was being operated between two states, and therefore came within the provisions of the Safety Appliance Act. In the case of *Diebold* v. *Ky. Traction Co.,* 117 Ky., 146, 77 S. W., 674, 63 L. R. A., 637, 111 Am. St. Rep., 230, 4 Ann. Cas., 445, there was an electric railway chartered for the purpose of carrying passengers and freight between two cities in different states. *Roy* v. *East St. Louis & Suburban Ry. Co.,* 119 Ill. App., 313; *Hannah* v. *Metropolitan Street Ry. Co.,* 81 Mo. App., 78; *Elizabethtown, etc., R. R.* v. *Ashland & C. St. Ry. Co.,* 96 Ky., 347, 26 S. W., 181.

All these cases may be distinguished from the case at bar upon some one of the above mentioned grounds. In the Missouri case above referred to, the road ran between Kansas City, Mo., and Independence, Mo., and was evidently not a street railroad. And the court held that the fencing statute of Missouri applied to this company, a very different sort of statute from the one under consideration. However, the case of *Sams* v. *St. Louis, etc., Ry. Co.*, 174 Mo., 53, 73 S. W., 686, 61 L. R. A., 475, is the announcement of the court of last resort in Missouri.

Further illustrating and reconciling the apparent conflict in the authorities, we refer to *Birmingham Mineral R. Co.* v. *Jacobs*, 92 Ala., 187, 9 South, 320, 12 L. R. A., 830. The stop statute of Alabama was before the court. This was a case of two roads, each operated by steam, crossing each other. The court held that the dummy railroad was not a street railway within the meaning of the constitution and statutes of that state, but that it was a railroad. The road traversed wide scopes of country, with regular stations, used heavy dummy engines, etc. Also in the case of *L. & N. R. R.* v. *Anchors*, 114 Ala., 492, 22 South, 279, 62 Am. St. Rep., 116, the Oxford Lake Line was engaged in the business of transporting freight and passengers between Anniston, Oxford, and intermediate points.

*Savannah, etc., R. R. Co.* v. *Williams*, 117 Ga., 414, 43 S. E., 751, 61 L. R. A., 249, is a case cited as an authority; but in that state, by statute as well as

Ill. Cent. R. Co. v. Hudson.

by judicial decision, the word "railroad" includes street railroads, unless a contrary intention appears. As was said:

"The constitution, statutes, and decisions of this state recognize that the word 'railroad' is generic, and includes street railroads, narrow gauge roads, horse car companies, dummy lines, and street railroads operated by electricity." 

But even in the state of Georgia, we find a later announcement on the stop statute in the case of *Railroad* v. *Joiner,* 120 Ga., 905, 48 S. E., 336, which is cited and relied upon by counsel for the defendant.

Upon a consideration of all the authorities which we have found, and to which we have been cited, we are irresistibly driven to the conclusion that the stop statute has no application to a crossing between a commercial steam railroad and a street car line.

But it is insisted that if the statute does not apply to street railroads, it does apply to the Raleigh line of the Memphis Street Railway Company, which line it is insisted, is an interurban railroad. We cannot assent to this view. As before stated, the Memphis Street Railway Company operates the Raleigh line as an integral part of its street railway system in the city of Memphis and suburbs. It is chartered to do the business of a street railroad over its Raleigh line, and, so far as we are able to discover from the record, it is operating only a street car line to and through Binghampton, which is a thickly populated suburb of the city of Memphis. It is operating

on the Raleigh line, as far as Binghampton, the same cars, by the same power, on the same kind of rails, with the same speed and momentum, as it operates over this same line and other lines within the city limits of Memphis. The street cars acquire no greater momentum, are no heavier, are just as easily handled, at Binghampton as at any other point well within the city limits of Memphis. Not only so, but the mere passing of an imaginary line (city limits) does not change the character of operation, because in the suburbs the community may be as thickly populated, or more so, than at other points well within the city limits. The Street Railway Company is not engaged in the business of operating an interurban railroad between Binghampton and Memphis; and, while we now express no opinion as to the application of the statute to interurban railroads, we do hold that the statute has no application to the Binghampton crossing.

It is insisted that the matter in this state is put at rest by the case of *Hogan* v. *Railroad Co.*, 131 Tenn., 244, 174 S. W., 1118, L. R. A., 1915E, 788, Ann. Cas., 1916C, 1162. That was the case of an interurban railway, and the case has no application to the case at bar, for we cannot hold that the act of 1907, chapter 433, enlarges the application of the stop statute so as to make it apply to a crossing between a railroad and a street car line in the surburbs of a city.

It must therefore follow that the learned court of civil appeals was in error in holding that the stop statute had any application in this case. However, that court was right in reversing the trial court on the motion for a peremptory instruction. The peremptory instruction ought not to have been given, because the plaintiff was also relying upon the proof as making out a case of common-law negligence, as alleged in her declaration. That question is fully covered by this court in the case of *Idella A. Roper* v. *Memphis Street Railway Company et al.*, 188 S. W., 588, in the opinion rendered by the court this day. For the views of the court in this case upon the alleged common-law negligence, and alleged failure of the railroad company to use the statutory precautions, we refer to the opinion in the *Roper Case*.

It follows that the judgment of the court of civil appeals, reversing and remanding this cause, is affirmed, and the case shall be proceeded with in accordance with the views expressed in the *Roper Case*.

HUGHES, Special Judge (concurring in part).

I agree to the judgment of affirmance, but do not concur in so much of the opinion of the majority as deals with the stop statute. In my opinion the Raleigh line is an interurban railway. Inside the city it may be a street railway, but not so after it leaves the city. I think the stop statute applies to interurban railways.

The court does not hold that under the act of 1871 an interurban railway is not a railroad within the meaning of the act. In the view of the majority, that question is not before the court. But the court does decide that the Raleigh line was a street railway at the time and place where the collision occurred. There lies the precise point of difference between us. If the opinion of the court goes further, it does so unnecessarily.

In view of the development of electric interurban transportation, present and prospective, we must come ultimately, I think, to treat such lines as street railways within the cities through which they run if they render street car service therein. They may be street railways after they cross the imaginary line which constitutes the city limits. But after they leave what is the city in fact, and cease to render such service as street cars render, they are railroads within the meaning of this act as fully as if the cars were driven by steam. That these lines carry people instead of freight is a reason for applying the act to them, and not a reason against it.