FRED FREIDAY, Appellant, v. THE SIOUX CITY RAPID TRANSIT COMPANY.

"Street Railway" Defined. An elevated steam railroad operated in a street to convey passengers to different portions of the city, is a "railway" and not a "street railway" within Code, 464, providing compensation to owners of lots abutting on streets in which a "railroad" may be laid.

*Appeal from Woodbury District Court.—*HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, OCTOBER 17, 1894.

APPEAL from the ruling of the court dismissing plaintiff's action, and rendering a judgment for defendant, notwithstanding the verdict, in an *ad quod damnum* proceeding.—*Reversed.*

*Argo, McDuffie & Argo* and *Lynn & Sullivan* for appellant.

*Wright, Hubbard & Yeomans* for appellee.

KINNE, J.—I.   April 28, 1890, the sheriff of Woodbury county, at defendant's instance, appointed commissioners to assess the damages to lot 11 in block 22, Central Sioux City, in the city of Sioux City, Iowa, and owned by the plaintiff, which might be caused by the use and appropriation by the defendant of the street upon which said lot fronted, for an elevated railway.   The commissioners reported that plaintiff was not entitled to any damage.   From the award thus made, the plaintiff appealed to the district court; and, after a trial to a jury and a verdict of one thousand, two hundred and ninety-one dollars for plaintiff, the court, on defendant's motion, dismissed plaintiff's action, notwithstanding the verdict, and rendered judgment against plaintiff for costs.   From this ruling and judgment this appeal is prosecuted.

II.   The question presented for our determination is whether, under the circumstances disclosed in the record, the plaintiff, as the owner of property abutting upon Third street, upon which street defendant erected and operated its elevated railway by steam power, is entitled to damages.   Our statute empowers cities and incorporated towns "to authorize or forbid the location and laying down of tracks for railways and street railways on all streets, alleys, and public places; but no railway track can thus be located and laid down until after the injury to property abutting upon the street, alley, or public place upon which said railway track is proposed to be located and laid down has been ascertained and compensated in the manner provided for taking private property for works of internal improvement,"—that is, by ascertaining and paying the damages

to the property affected by the proposed railway. Code, section 464; Code, 1873, chapter 4, title 10. By section 1262 of the Code of 1873, as amended, it is provided that railway corporations "may raise or lower any turnpike, plank-road, or other highway for the purpose of having its railway cross over or under the same," etc. The twenty-third general assembly amended section 464 of the Code by providing that cities and towns "shall have the power to authorize or forbid the construction of street railways within their limits, and may define the motive power by which the cars thereon shall be propelled, including animal, electricity, steam, or other power, whether now known or hereafter utilized." A point of contention is as to whether this amendment was in force, so as to apply to this action. As we do not rest our decision upon this amendment, but upon the other statutes quoted, we need not decide as to whether or not the amendment is applicable in this case. The city, by two ordinances, granted defendant company the right to use and occupy the street in front of plaintiff's lot "upon the payment to the abutting lot and landowners injured thereby the just compensation due, as provided in section 464 of the Code of Iowa. Such compensation to be ascertained and paid as provided by chapter 4 of title 10 of the Code of Iowa; provided the abutting lot or landowners shall be entitled to such damages," etc. It is said that section 464 of the Code, in so far as it provides for the assessment and payment of damages to abutting lot owners before any railway shall be laid upon a street, does not apply to street railways; and the case of *Sears v. Railway Co.*, 65 Iowa, 742, 23 N. W. Rep. 150, is relied upon in support of such claim. That was a case of a street railway operated by horse power. The court, in discussing Code, section 464, said: "In the grant of power, both 'railways' and 'street railways' are mentioned. There is, then, a statutory implication

that they are not the same, but that there is a difference between the two, and that a grant of the power to authorize one would not necessarily include the other. The limitation or qualification of such power, it will be observed, is thus expressed in the statute: 'But no railway track can thus be located and laid down' until the damage to the abutting owner is ascertained and compensated. As thus used in the statute, does 'railway track' mean or include 'street railway track' operated by horse power? We think not. 'Railway track,' as generally understood, means only a track on which steam is used as the motive power, and it will be presumed that the general assembly used such words in that sense, unless the context or subject-matter contemplated by the statute requires that a different meaning than that in ordinary use should be adopted.''

We have quoted from the opinion referred to that it may be seen that the case involved was that of a surface street railway operated by horse power. It was held in *Stanley v. City of Davenport*, 54 Iowa, 463, 2 N. W. Rep. 1064, and 6 N. W. Rep. 706, in effect, that, in the absence of express legislation authorizing it, cities had no right to allow the operation of surface street railways by steam power. Is the elevated railway of defendant a "street railway," within the meaning of those words as used in section 464 of the Code? If it is not a ."street railway," within the statutory meaning, then it is a railway which can not be erected and operated without first making just compensation to the abutting lot owner. While it is true that defendant company's road is operated only for the carriage of passengers, and its cars stop at street crossings to receive and discharge such passengers, and while it runs lengthwise of and is elevated above the street, and may be said to be a street railway in the sense that it is a conveyance by rail for the carrying of passengers only, from one part of the city

to another, still it does not follow that it is a "street
railway," within the statutory provision. When this
section of the Code was enacted, such a thing as an
elevated railway, traversing the streets of a city for the
purpose of transferring people from one part of a city
to another, was unknown. There is no reason to think
that the legislature, in passing this section, had in
mind such means of transportation. Indeed, under
the circumstances, it must be presumed that the words
"street railway," as used in the statute, originally
referred to the then known and used railways, the rails
of which were laid to conform to the grade of the
surface of the street, and the construction of which
did not of necessity exclude the public from the use of
a part of the street. While, as we have indicated, the
object attained by an elevated railway like defendant's
is the same as in case of a street railway laid upon the
surface of the street, viz., the transportation of people
from one place to another within the municipality, in
every other respect, the elevated road is distinguishable
from a surface railway. The defendant company's
road is elevated above the street. It is supported by
posts, which are a permanent obstruction to travel.
It has an overhead roadbed, inclosed at the sides, which
obstructs the light and view. Such a structure re-
duces the value of abutting property, and impairs its
free use and unrestricted enjoyment. Holding, as we
do, that defendant company's road is a "railway," and
not a "street railway," within the language used in
section 464 of the Code, it was necessary for defend-
ant, before laying its track and operating its road, to
have the damages to plaintiff assessed and paid. This
it undertook to do, and from the finding of the com-
missioners plaintiff appealed, as he had a right to do,
to the district court, where his damages were assessed
by a jury. Judgment should have been entered upon
the verdict in his favor. The court erred in sustaining

defendant's motion, and the case is reversed and remanded to the district court, which is directed to enter a judgment on the verdict.    REVERSED.