DES MOINES CITY RAILWAY COMPANY, Appellee, v. CITY OF DES MOINES, Appellant.

MUNICIPAL CORPORATIONS: Assessments—Railroad Right of
1  Way as Abutting Property. A strip of land extending along the center of a public street, but which is *no part of the street*, because owned in *fee* by a street railway company which occupies it with its tracks, the public being wholly excluded from all right therein, except at intersecting street crossings, is "abutting property," within the meaning of Sec. 792 *et seq.*, Code Supp., 1913, and consequently subject to special assessment for public improvements on the street.

DEEDS: Fee (?) or Easement (?)—Railway Right of Way. A
2  deed which "sells and quitclaims to the grantee all the right,

title, and interest" of the grantor, carries a *fee*, and not a mere easement, even though coupled with an agreement that grantee will use the land for the construction and operation of a street railway.

**DEEDS:** Estates in Fee—Possibility of Reverter. An estate *in fee* is not deprived of such characteristic by a clause in the deed providing for a "possible reverter."

**RAILROADS:** Eminent Domain—Non-Existence of Right. Lands may not be condemned for street railway right of way, for the reason that the Eminent Domain Act does not so provide.

**TAXATION:** Exemptions—Railway Right of Way—Special Assessments. Taxation is the rule; exemption, the exception. And courts will not create the exception. So held where it was urged that a street railway right of way, owned in fee, ought, by reason of its use *as a right of way only*, to be held exempt from special assessments for paving.

**MUNICIPAL CORPORATIONS:** Assessments—Railway Right of Way Abutting on Street. The statute (Sec. 834, Code, 1897), which imposes the duty upon all railways to pave between the rails of their tracks and one foot outside, does not apply to a railway right of way which is owned by the company in fee, and which is no part of the street, but which abuts on a street.

**MUNICIPAL CORPORATIONS:** Assessments—Railway Right of Way. The term "railroad," as employed in Sec. 791-i, Code Supp., 1913 (authorizing special assessments for public improvements against railroad right of ways fronting or abutting on public streets, etc.), includes a *street* railroad.

**MUNICIPAL CORPORATIONS:** Assessments—Railway Right of Way—Street Railway Defined. Conceding, *arguendo*, that Sec. 791-i, Code Supp., 1913 (authorizing assessments against railroad right of ways for paving, etc.), is not applicable to "street railways," yet such section is applicable to a railway which, along the center of a public street, occupies with its tracks a strip of ground which it owns in fee, which is no part of the street, and in which the public has no interest, except at street crossings. Such a railway is not a *street* railway.

*Appeal from Polk District Court.*—W. H. McHenry, Judge.

September 30, 1916.

Supplemental Opinion on Rehearing, December 20, 1917.

Rehearing Denied June 27, 1918.

The plaintiff's property having been assessed for the expense of paving and curbing Ingersoll Avenue in the City of Des Moines, appealed therefrom to the district court, where the assessments were held to be invalid, and set aside. From that decision, the defendant city appeals.—*Reversed.*

*H. W. Byers, Guy A. Miller, Thomas Watters, Jr.,* and *Earl M. Steer,* for appellant.

*Parker, Parrish & Miller,* for appellee.

Weaver, J.—There is very little controversy as to the essential facts involved in this litigation. The plaintiff claims to own and operate a system of street railways in the city of of Des Moines, and to own and oc-

1. MUNICIPAL CORPORATIONS: assessments: railroad right of way as abutting property.

cupy a right of way for its road 20 feet wide, extending from Twenty-eighth Street on the east to Forty-second Street on the west, in that city. The nature and extent of the title by which this right of way is held is the subject of much argument by counsel, and will be more particularly considered in the course of this opinion. Originally, the corporate limits of the city of Des Moines did not extend west of a point between Thirty-seventh and Thirty-eighth Streets. Westward from this point, the property under consideration was within the limits of the incorporated town of Greenwood Park, which has since been absorbed by or incorporated into the city of Des Moines. In the year 1888, the town of Greenwood Park, by ordinance, granted to plaintiff's grantor, the Des Moines Rapid Transit Company, the right to construct its railway upon a 65-foot street, running east and west through said incorporated town, and to operate the same by steam, cable, or electric motor, but not for general

railway purposes. Included in said ordinance was a provi-
sion as follows:

"Sec. 3. That if said Rapid Transit Company shall pro-
cure said street running east and west, as aforesaid, to be
increased in width so that its entire width shall be 100 feet,
it shall have the right to appropriate a strip thereof 10 feet
wide on each side of the center line thereof for its exclusive
right of way, and shall not in such case be compelled to pave
said 20-foot right of way except at street crossings, but
shall curb the same whenever said street shall be ordered
to be paved, with such material as shall be ordered
by said town council, and maintain said curbing."

Availing itself of the benefits thus offered, the Transit
Company obtained from the abutting property owners deeds
or agreements to dedicate to the public for street purposes
a strip of land 17½ feet wide on either side of the original
street, and a waiver of their rights, if any, to recover dam-
ages because of the location and construction of the railway.
Having thus complied with the condition of the grant from
the city, the company did appropriate the strip to its ex-
clusive use, and has ever since maintained possession there-
of. Each dedicator to the additional land also agreed that
the company should have exclusive right to the 20-foot strip,
while the company agreed to "confine the use of said right
of way to the transfer of passengers and small freight traf-
fic." Eastward from the border of Greenwood Park, as we
infer from the record, there was not, at that date, any
street or highway yet established on this line into the city of
Des Moines; and the company's right of way in that direc-
tion to Twenty-eighth Street was procured as follows: The
owners of the intervening tracts of land were Washington
Miller, A. H. Murphy, John H. Mullin, Nellie L. Harding,
John A. Garver, and Walter McCain. These proprietors
conveyed to the company a continuous strip of land, 20 feet
wide, across their respective lots, and by the same instru-

ment undertook to dedicate and open for public use through such lot "a street or roadway 40 feet wide on either side and abutting upon said 20-foot strip." By the terms of each conveyance, the grantors undertook to "sell and quitclaim unto the Des Moines Rapid Transit Company, its successors and assigns, all our interest" in the 20-foot strip of land. In some of the conveyances, the expression is, "do bargain, sell and quitclaim to said company and to its successors and assigns forever, all our right, title and interest, estate, claim and demand both in law and in equity as well in possession as in expectancy." In each deed, it is also provided that the strip so conveyed is to be used for the construction and operation of a street railway thereon. In five of the six deeds, there is the further provision that, in the event of the abandonment of the use of the 20-foot strip for street railway purposes, "it shall revert to the grantors." In the other deed, it is provided that, in the event of such abandonment, "it shall revert to the public as a part of said highway." The public way through which this right of way extends is now known as Ingersoll Avenue, and all the rights of the Rapid Transit Company under the ordinance of the town of Greenwood Park, as well as under the various written agreements and conveyances by the property owners, are now vested in the plaintiff, the Des Moines City Railway Company. The 20-feet strip, except as it is crossed by intersecting streets, has, at no time since its acquirement by the railway company, been occupied, used, or claimed as a part of the public street, but has been used and controlled exclusively by the railway company. It is separated by a curb from the street on either side; and, though the public ways are paved, there is no paving upon the strip, save at the crossings above mentioned. Passengers upon the cars are received and discharged at the crossings.

Under proper proceedings, therefore, the city of Des Moines, by its council, ordered the paving and curbing of

the roadway bordering upon this strip, at the expense of the property abutting thereon; and, upon the theory that such strip was abutting property, liable to contribute to such expense, made the assessments which are here in controversy. At the proper time, the plaintiff appeared before the city council, and made objection to these assessments. Of the objections so filed, reliance in this court is placed upon the following:

(1)   That the 20-foot strip is not, within the meaning of the statute or of the ordinance, "abutting property," and is in no manner liable to such special assessment.

(2)   That the statute providing for special assessments upon railroad right of ways for street improvements has no application to street railways, and that there is no statute giving the city or its council power or authority to charge a street railway company, or its property, with a burden of that nature.

On trial of the appeal, the district court sustained the assessment, so far as it related to the cost of paving between the rails and one foot on either side thereof, where the track crossed the intersecting streets, but held that the right of way was not abutting property, within the meaning of the law, and ordered the cancellation of the assessment which had been made thereon. From this part of the decree, the defendant city appeals.

I.   The first proposition on which appellee relies to sustain the decree, is that the company is not the owner of the property embraced in the 20-foot strip, and that its interest therein is a mere easement, the title to the

2. DEEDS: fee (?) or easement (?): railway right of way.

land being in the persons or parties granting the easement. It is then argued that the land in question, being used as a mere right of way, is not subject to assessment for street paving. It seems clear, however, that the appellee's title is something more than an easement. The conveyances under which it

occupies and exercises dominion over the 20-foot strip do not limit their legal effect to a right of way only.   No mention of a right of way, either in terms or by words of necessarily equivalent meaning, is to be found in any of the deeds. In each, the owners of the tract convey, sell and quitclaim to the grantee all their right, title, and interest in the *land,* and not merely in the right of way. It is not denied that the grantors owned and had the right to convey the land; and their deeds, in form and. in substance, were sufficient to vest a fee in the grantee.   This is none the less true because each deed embodied a statement that the land is to be used for the construction and operation of a street railway, and provides that if, in the future, it shall be abandoned for that purpose, it shall revert to the grantor or to the public.

3. DEEDS: estates in fee: possibility of reverter.

A condition in a deed by which the property is to revert to the grantor, upon an event which may or may never occur, gives rise to what the books call the "possibility of reverter," and serves, in some degree, to qualify the fee created by the conveyance.   But it remains true that an estate so conveyed is, nevertheless, a fee; and the grantee thereof is the owner, so long as the estate continues, and until the reverter takes place.   4 Kent's Commentaries 10; *State v. Brown,* 27 N. J. L. 13; *Whiting v. Whiting,* 4 Conn. 179; Tiedeman on Real Property, Sec. 271.   Speaking of the passing of title to land, subject to a possibility of reverter in the grantor, the Massachusetts court has said:

"Until the happening of the contingency, or a breach of the condition by which the precedent estate is determined, it retains all the characteristics and qualities of an estate in fee.   Although defeasible, it is still an estate in fee.   The prior estate may continue forever, it being an estate of inheritance, and liable only to determine on an event which may never happen." *Brattle Square Church v. Grant,* 3 Gray (Mass.) 142, 150.

See, also, *Breckinridge v. Delaware, L. & W. R. Co.*, (N. J. Eq.) 33 Atl. 800; *New Jersey Zinc & Iron Co. v. Morris Canal Co.*, 44 N. J. Eq. 398 (15 Atl. 227). In the *Breckinridge* case, the court, construing the effect of a deed to railway company with "power to take and use the same in all lawful ways for the purpose of the extension of the railroad and as part of the route thereof," and reserving a right of crossing to the grantor, held that it passed a fee, but qualified by the provisions contained in the instrument. In *New Jersey Zinc & Iron Co. v. Morris Canal Co.*, supra, the court had occasion to speak of the difference between a right of way taken by virtue of the power of eminent domain and one obtained by deed from the owner, as follows:

"The difference in the legal effect which must be attributed to the conveyance of an estate in fee, whether absolute or qualified, and the right which the defendants acquired by simply taking possession of land for a right of way, or condemning it for a like purpose, is wide and vital. Under a conveyance, even though it be only of a qualified fee, the defendants have, while their estate continues, by the plain terms of their grant an absolute right to the exclusive possession of the land conveyed; and any attempt by their grantor to exercise any sort of possession over the land, or to use any part of it as a means of advantage or profit to himself, would be in plain derogation of his grant, and a clear violation of defendants' rights. The defendants, under a deed conveying a qualified fee, would, while their title continued, have the same right to the exclusive use and enjoyment of the land * * * as though they held it in fee simple absolute. * * * But the defendants' right in land acquired by any other means than by grant, stands on an entirely different foundation."

An estate which may last forever is a fee. If it may end on the happening of a merely possible event, it is a determinable, or qualified, fee. *First Universalist Society v. Bo-*

*land,* 155 Mass. 237.   In the decision of *Chicago, R. I. & P. R. Co. v. City of Ottumwa,* 112 Iowa 300, cited by appellee, this court, holding, under the statutes then in force, that the plaintiff's abutting right of way was not subject to special assessment for paving emphasized the distinction between a mere right of way acquired by condemnation, and one where title to the right of way was acquired by purchase and conveyance from the owner, and reconciles its conclusion with its former holding in *City of Muscatine v. Chicago, R. I. & P. R. Co.,* 79 Iowa 645, by pointing out that, in the latter case, the company had acquired title by grant or purchase. It expressly states the concrete question to be, "Is a railroad right of way *acquired by condemnation proceedings* either a lot or parcel of land subject to assessment?"   This question, a majority of the court answered in the negative, and it may be conceded to be an authoritative exposition of the law of this state as it then stood.   Authorities are cited by appellee, to the effect that a conveyance of a mere right of way vests in the grantee no more than an easement, such as might have been acquired by condemnation.   It will be found, on examination, that practically every case of this kind involves the construction and effect of deeds to railway companies conveying, in terms, a mere right of way, and not a conveyance of the title to the land.   *Chicago, R. I. & P. R. Co. v. City of Ottumwa,* 112 Iowa 300; *Brown v. Young,* 69 Iowa 625; *Vermilya v. Chicago, M. & St. P. R. Co.,* 66 Iowa 606; *Ottumwa, C. F. & St. P. R. Co. v. McWilliams,* 71 Iowa 164, 166.   On the contrary, as we shall see, it has been explicitly held by us that, where the language of the conveyance, construed in its ordinary and usually accepted sense, operates to convey a fee, it vests the grantee with more than a mere right of way.   For example, in the comparatively recent case of *Watkins v. Iowa Cent. R. Co.,* 123 Iowa 390, the company took an ordinary deed of bargain and sale for a strip of ground upon which it erected and operated

its road; and a question arose as to whether the title so acquired had been lost by abandonment. Among other questions discussed, the court there said:    -

"It is contended that defendant took no greater title through its deed from Mock than it would have acquired by condemnation proceedings under the statute whereby it receives simply an easement in the land for railway purposes. * * * There is no doubt that the deed from Mock to the defendant conveyed a fee-simple title to the strip of land."

In the same connection, we again said:

"There can be no doubt that Mock parted with the fee-simple title to this strip of land, and that defendant, a corporation duly organized, received that fee. * * * When a corporation is authorized to hold real estate for some purposes, or to a limited extent, a deed to it is not void, although the lands were for other purposes or beyond the limit allowed. As between the parties, the deed passes title, and the state alone can inquire into the matter by direct proceedings."

To the same effect is *Askew v. Smith,* 109 Wis. 532. The writer of this opinion would hesitate to go quite so far as to say that a title so conveyed to a railroad company conveys, in all cases, an absolute title in fee simple, a term which ordinarily imports an indefeasible title. If the deed itself contains a provision by which the title so conveyed is subject to a possible forfeiture or reverter, or if the statute under which the corporation exists, limits its authority to take and hold title, except for special uses and purposes, the title so passed is still a fee, but a fee which is liable to divestment when the use of the land becomes inconsistent with the limitation expressed in the deed or imposed by the statute. Directly in point on this proposition is *Polebitzki v. John Week Lbr. Co.,* 157 Wis. 377 (147 N. W. 703). There, an owner deeded, by ordinary conveyance, a strip of land on a river bank, for the purpose of rafting and booming logs.

This was held to pass a qualified fee title.  The court says:

"An easement is something quite different from a fee or a limited fee.  In the one case, title does not pass, but only a right of use or privilege in the land of another.  In the other case, the title does pass, even though the use be limited."

The rule is, perhaps, nowhere more clearly stated than in *State v. Brown,* 27 N. J. L. 13.  The deed in that case conveyed land on which to construct a canal, and was limited by the words "so long as used for a canal;" and it was held that such a conveyance to a corporation, restricting the owner of the land, had the effect to vest the fee in the grantee; and that, although such grantee may have no right to use the land for any purpose other than that named in the deed, yet it has the right to prevent any other persons from using it for any purpose whatever.  But the question here suggested is one on which we need not now undertake to pass.  But, irrespective of what may have been held elsewhere, we think it clear that, under our own statute and prior holdings, it is settled that a distinction exists between a conveyance of title to land and a conveyance of a mere right of way or easement over land, even though the deed provides that the title is conveyed for the purpose of enabling the grantee to use it for the building and operation of a railway .

Another thought suggests itself in this connection. There can be, in this case, no holding that the deeds of conveyance are the equivalent, in effect, of a condemnation, for

4. RAILROADS: eminent domain: non-existence of right.

the sufficient reason that a street railway company is vested by statute with no right of eminent domain, and it could not have condemned this 20-foot strip, even if it had so desired.  *Thompson-Houston Elec. Co. v. Simon,* 20 Ore. 60; *Heilman v. Lebanon & A. St. R. Co.,* 180 Pa. St. 627.  It acquired its title by the only means open to it, and that is by municipal grant, where it occupies the streets,

and by conveyance from the property owners, where it departs from the public way. The conveyances which it obtained, vested it with a qualified fee, and not a mere right of way; and the assessment against it cannot be avoided on the theory that its interest in the property is that of a holder of a mere easement.

Exemption from taxation, or from an assessment which is spread over other lands within the assessment district, is something which the law will not uphold, except when clear-

5. Taxation: exemptions: railway right of way: special assessments.

ly required by some legal or statutory rule. Where the law authorizes a special assessment on lands, without providing any exception because of the use to which such property is put, it is beyond the proper province of the court to create such an exception. This and other conclusions above expressed find support in principles recognized in *Northern Pac. R. Co. v. Seattle,* 46 Wash. 674 (91 Pac. 244); *Louisville & N. R. Co. v. Barber Asphalt P. Co.,* 197 U. S. 430; *Northern Ind. R. Co. v. Connelley,* 10 Ohio 159, 164; *In re New York,* 11 Johns. (N. Y.) 77; *Chicago & Alton R. Co. v. City of Joliet,* 153 Ill. 649; *Peru & I. R. Co. v. Hanna,* 68 Ind. 562; *State, Paterson, etc., R. Co. v. City of Paissaic,* 54 N. J. L. 340 (23 Atl. 945); *Lake Shore & M. S. R. Co. v. City of Grand Rapids,* 102 Mich. 374; *Chicago & N. W. R. Co. v. People,* 120 Ill. 104; *City of Ottawa v. Church,* 20 Ill. 423; *Burlington & M. R. R. Co. v. Spearman,* 12 Iowa 112, 117; *Chicago, R. I. & P. R. Co. v. City of Centerville,* 172 Iowa 444; *Heman Const. Co. v. Wabash R. Co.,* 206 Mo. 172; *Chicago, M. & St. P. R. Co. v. Milwaukee,* 148 Wis. 39 (133 N. W. 1120); *Illinois Cent. R. Co. v. Decatur,* 147 U. S. 190; *Atchison, T. & S. F. R. Co. v. Peterson,* 58 Kan. 818; *New York Cent. & H. R. R. Co. v. Aldridge,* 135 N. Y. 83; *Vail v. Long Island R. Co.,* 106 N. Y. 283; *Stevens v. Galveston, H. & S. A. R. Co.,* (Tex.) 169 S. W. 644; *City of Shreveport v. Shreveport Traction Co.,* 134 La. 568; Penn-

*sylvania Hort. Society v. Craig,* 240 Pa. St. 137; *Matter of City of Buffalo,* 206 N. Y. 319 (99 N. E. 850) ; *Georgia R. & B. Co. v. Decatur,* 137 Ga. 537.

II.  The further contention of appellee that the city is without inherent power to levy special assessments for street improvements, and that such authority, if it exists at all,

6. MUNICIPAL CORPORATIONS: assessments: railway right of way abutting on street.

must have its origin in some statute providing therefor, is sound. The question then arises whether we have any such statute. As is familiarly known, Chapter 7, Title V, of the Code, with its subsequent amend-

ments, expressly vests cities with power to improve streets by paving and curbing, and to assess the cost thereof upon abutting and adjacent property, and prescribes the procedure by which such authority can be made effective. It provides and fixes the portion of the paving expense which shall be charged upon street railways which occupy any part of a paved street (Code Section 834), but does not specifically mention such railways, or railway companies of any kind, in speaking of abutting or adjacent property. It does, however, provide for assessment upon abutting and adjacent property, in general terms, without any discrimination between owners thereof, and without exempting any property because of the manner of its use or occupation. The words employed are "abutting property," and not abutting "lots" or "blocks;" and, while it may be admitted that this has reference to real property only, the use of the broadly general term is significant of a legislative purpose to include within the liability to special assessment all real property within the prescribed limits, without discrimination. If the term "abutting property" fairly includes a railway right of way bordering upon the street improved, then the power and authority to charge it with an assessment cannot be doubted, even though railways and street railways are not mentioned by name in the statute.

By Section 791-i, Code Supplement, 1913, "the right of way of any railroad company fronting or abutting upon" a city street is expressly made liable to special assessment for street improvements, and the assessment is made collectible by suit at law, as a money demand. But counsel seek to avoid the effect of this provision by urging that the term "railroad," as there employed, should be interpreted as applicable to commercial railroads only, and as having no reference to street railways. It cannot be denied that, in many, and perhaps most, instances in which the word railroad or railway is used, without any term of qualification, it is to be given this restricted meaning; but this is by no means universal. For example, a statute providing for redress of injuries arising from the neglect of "railroad companies" has been held to apply to railroads of any and all kinds. *Johnson's Admr. v. Louisville City R. Co.*, 73 Ky. 231, 232. An act "to enable railroad companies to borrow money" applies to street railways. *City of Chicago v. Evans*, 24 Ill. 52, 55. In *Massachusetts L. & T. Co. v. Hamilton*, 32 C. C. A. 46, it was said that "railroad" has no such fixed definition as to enable a court to determine, from that word alone, whether it applies to street railways or not. See, also, *Savannah, T. & I. of H. R. Co. v. Williams*, 117 Ga. 414. It may be used, in a broad sense, to include railways of whatever kind, or however operated, or, in its technical sense, as not applicable to street railways. In some cases, the circumstances have been such that the word "railroads" has been held to apply to street railroads only. *People v. Craycroft*, 111 Cal. 544. Of a similar bearing are *Central C. R. Co. v. Twenty-third St. R. Co.*, 54 How. Pr. (N. Y.) 168, 185; *Hestonville, M. & F. P. R. Co. v. City of Philadelphia*, 89 Pa. St. 210, 219; *Montgomery's Appeal*, 136 Pa. St. 96; *Price v. State*, 74 Ga. 378; *Freiday v. Sioux City R. T. Co.*, 92 Iowa 191. It is very difficult to

7. MUNICIPAL CORPORATIONS: assessments: railway right of way.

suggest any good reason for applying the statute above cited to a commercial railway, which is not equally pertinent in the case of a street railway.

But, even if we were to hold with appellee that this statute, Code Supplement Section 791-i, is not applicable to street railways, we must then consider whether the company is, under the admitted circumstances, entitled to immunity, in this case from assessment as a street railway. In the *Freiday* case, supra, the railway company in question was elevated above the street, and performed all the ordinary functions of a street railway; but it was still held to be a railway, in the ordinary sense, and included in the statute governing railways generally. This conclusion was reached upon the theory that a street railway, within the meaning of the law, is one built upon the surface of a street, the track conforming to the street grade, and so constructed as not of necessity to exclude the public from the use of the part of the street so occupied. In short, a street railway is part of the public street. The company uses the street in common with other members of the public, having no exclusive right to the way it occupies. A street railway is a railway laid down upon streets for the purpose of carrying passengers. *Montgomery v. Santa Anna W. R. Co.*, 104 Cal. 186. It is a railway in a street. *Philadelphia v. McManes*, 175 Pa. St. 28. They must conform to the grades of the street they occupy. *Rahn Twp. v. Tamaqua St. R. Co.*, 167 Pa. St. 84. It has no exclusive privilege in the use of the street or part of the street it occupies. *Laufer v. Bridgeport Traction Co.*, 68 Conn. 475; *Canastota Knife Co. v. Newington T. Co.*, 69 Conn. 146; *Heilman v. Railway Co.*, 180 Pa. St. 627. Even though operated like street railways, they are not such if not built upon or not occupying streets. *Baltimore v. Baltimore, C. & E. M. P. R. Co.*, 84 Md. 1. A street railway lies along and upon the streets of a city or

8. MUNICIPAL CORPORATIONS: assessments: railway right of way: street railway defined.

town. *Thompson-Houston Elec. Co. v. Simon,* 20 Ore. 60. The appellee's railroad, so far at least as pertains to that portion in controversy, is not laid in or upon the public street. It is laid in and upon its own premises, acquired by purchase and deeds of conveyance. Of those premises it has and exercises exclusive use and possession. It does not necessarily conform its grade (except, perhaps, at street crossings) to the grade of the street or public way on either side of it. The public neither occupies nor uses it in common with the company or otherwise, or, if such use exists at any point, it is not grounded upon any public right. It is separated from the street by a curb, and is unpaved. It is conceded that the railway is used for the carrying of certain classes of freight. Such a railway does not accord with any of the accepted definitions of a street railway. In the *Freiday* case, having found that an elevated railway is not a street railway, within the meaning of the law, we said, "If it is not a 'street railway,' within the statutory meaning, then it is a 'railway,' within the meaning of Code Section 464," which was then under consideration. Following the line of reasoning there adopted, as this railway, in its ownership and operation over the line described, is not a street railway, it is a railway, in the general sense, as used in the statute making railway right of ways subject to local assessments for street improvements. To hold to the contrary, and sustain the plaintiff's contention, is to make it possible in every city for a corporation, ostensibly as a street railway company, to acquire, by the aid of the city council or otherwise, title to a strip of convenient width along any street or boulevard of sufficient width to permit it, and on this strip to build and operate its road, exclude the public from the common enjoyment and use thereof, and at the same time escape all liability for the expense of street improvement. It would be an impeachment of legislative intelligence to assume or believe that any such result was intended. It is not

necessitated by the language of any statute or by any rule or principle of law to which our attention has been called. That such property, whether held by an absolute title or defeasible title, is real estate, is too clear for successful contradiction. *Newark, etc., Traction Co. v. North Arlington,* 65 N. J. L. 150 (46 Atl. 568); *People v. Cassity,* 46 N. Y. 46; *People v. Commissioners of Taxes,* 82 N. Y. 459; *People v. Commissioners of Taxes,* 101 N. Y. 322; *City of New Haven v. Fair Haven & Westville R. Co.,* 38 Conn. 422.

If real estate, does it "abut" upon the street improved? If the railway was laid upon the surface of the street, it would not, of course, be liable to assessment as abutting property. In such case, however, it would come within the statute which provides for assessing against a street railway company the cost of paving between its rails and for an additional one foot on either side. But the strip of land assessed and the railway thereon are neither in nor on the street; it has never been dedicated to the public nor established as a street by the public authorities; and the fact that a public street or way extends along either side of such land, and that both such ways are designated and known by one common name, cannot do away with the other patent fact that such land abuts upon the improved street by which it is bounded. The situation may be aptly illustrated as follows: A, B, and C own city lots adjoining in the order named. The outer lots, owned by A and C, are each 40 feet wide, while B's lot is 20 feet wide. A and C unite in dedicating their lots to the public for street purposes, but B declines to unite therein. The dedication is accepted, and the two 40-foot ways are, by proper proceedings, ordered paved. Would C be permitted to escape liability to assessment on the plea that his land is not abutting property? No one would argue in support of such proposition, and we see no better reason for such a holding in the case now before us. The case is not at all parallel to the case of a street or boule-

vard along the middle of which is left an unpaved parking space, as counsel argue. In such case, the parking space is public property, the title to which is in the city. It is still a part of the street, though, like the parking on either side of the paved way, it is withdrawn from public travel, and made use of for ornamental purposes. In the case at bar, as we have already noted, the strip of land held by appellee is not a part of the street, either by dedication or otherwise, and we discover no reason for exempting it from liability to the same extent proportionally as other lands within the assessment district. Very directly in point, in this respect, is *City of Shreveport v. Shreveport Traction Co.,* 134 La. 568 (64 So. 414), where a 20-foot strip of land along the middle of a street was owned and occupied by a railway company, and held to be abutting property, liable to special assessment for street improvements.

It follows that the judgment and order appealed from must be set aside, and the cause remanded, with directions to the court below to confirm the special assessments as made.—*Reversed.*

Evans, C. J., Deemer and Preston, JJ., concur.

### Supplemental Opinion.

Per Curiam.—The opinion, in so far as it determines that the strip of ground on which plaintiff's tracks are laid is assessable for the improvement made, is adhered to. The trial court, in decreeing otherwise, did not pass upon the validity of the assessment as made by the city council, and to enable it so to do, and to enter such a decree with reference thereto as the law requires, the cause is remanded to the district court, with leave to either party, if so disposed, to introduce additional evidence.

The order in the last sentence is so modified, and the petition for rehearing overruled.