Algene M. HELMS, Individually, and as Administrator of the Estate of Carl M. Helms, and Carla A. Lamphere, Appellees,

v.

Anna M. HELTEN, Louise Cummings, Walter Cummings, Edward Helms and Henry Helms, Appellants,

Edward Helms,
Counterclaimant-Appellant.

No. 62820.

Supreme Court of Iowa.

April 23, 1980.

George Lindeman of Lindeman & Yagla, Waterloo, for appellants.

Donald H. Gloe of Miller, Pearson, Gloe & Burns, Decorah, and M. S. O'Brien of O'Brien Law Firm, P. C., Oelwein, for appellees.

REES, Justice.

The defendants and the counterclaimant appeal from judgments entered in favor of plaintiffs in their action to quiet title to certain farmland. Edward Helms appeals from an adverse judgment on his counterclaim to recover the proceeds from the sale of crops from farmland separate from that involved in the plaintiffs' original action.

On January 20, 1977 Algene Helms, both individually and as the administrator of the estate of Carl Helms, and her daughter, Carla Lamphere, filed their petition in equity against the defendants to quiet title to a 105-acre tract of farmland or, alternatively, to establish Algene's dower interest in the property. The defendants and the counterclaimant are brothers, sisters, and a brother-in-law of Carl Helms, the common law husband of Algene. On August 5, 1977 defendant Edward Helms filed his counterclaim for one-half of the net proceeds from the 1975 crops on a 240-acre farm which he had held with Carl in joint tenancy with right of survivorship. In response, plaintiffs asserted the six-month statute of limitations for claims against estates, § 633.410, The Code 1977, as a defense.

Following trial to the court, Edward moved to amend his counterclaim to conform to proof, asserting that he was entitled to all the proceeds from the sale of the 1975 crops. His motion was overruled on October 30, 1978, the court concluding that the record did not support such an amendment. At the same time the court ruled on the merits of the controversy, quieting title in the plaintiffs and dismissing the counterclaim. Notice of appeal from these rulings was filed on November 29, 1978.

The factual underpinnings of this dispute are somewhat involved and require a brief recitation, with subsequent elaboration as needed.

In 1954 Carl Helms began cohabiting with Mrs. Don (Algene) Wittenberg, who had recently been divorced. A daughter, Carla, a plaintiff in the action, was born to the couple in January of 1955. Carl and Algene lived together until Carl's death on October 2, 1975, but never formalized their union by a ceremonial marriage. In its findings of fact the trial court found Algene to be Carl's common law wife at all times material to this appeal.

The 105-acre parcel of land in dispute was initially owned by Albert Helms, who, as shall become apparent, did not approve of Carl's relationship with Algene. Albert was the father of Carl, Anna M. Helton, Louise Cummings, Edward Helms and Henry Helms. In 1957 Albert executed a will devising the 105-acre farm to Carl "as long as he refrains from marrying or associating with in any way Mrs. Don Wittenberg". Albert Helms died in 1967, after which his will was probated. The final report in his estate makes no mention of the condition attached to Carl's inheritance of the 105-acre tract of land.

In June of 1968 Carl joined in the execution of a warranty deed conveying the farm in question to the defendants, his brothers and sisters and their spouses, who would have taken the farm under the will upon the enforcement of the limitation on Carl's devise. The conveyance was expressly made subject to the life use of the premises by Carl Helms. The deed made reference to consideration of "one dollar and other valuable consideration". The marital status of all those joining in the instrument, with the exception of Carl, was noted on the face of the deed. No reference was made in the instrument to Carl's marital status, although all of the parties to the transaction knew of Carl's relationship with Algene. The deed was recorded in May of 1969. The testimony of the parties to the transaction indicated that Carl was given the life estate in the premises in lieu of the enforcement of the condition contained in the will because his siblings felt it inequitable that Carl should be wholly deprived of the devise in his father's will. It is this conveyance which Algene sought to set aside or, in the alternative, against which she asserted her dower interest.

The counterclaim of Edward Helms involves crop income from a 240-acre farm

owned by Carl and Edward in joint tenancy with right of survivorship, which was rented to a neighbor in 1975 on a crop-share basis. In June and December of 1976 Algene, as administrator of Carl's estate, received two checks from a grain elevator for grain sold from the premises totaling $29,631.77 as the landlord's share of the corn and beans harvested from the farm in 1975. This money was taken into the estate of Carl and eventually distributed to Algene and Carla.

At trial, the farm tenant on the 240-acre farm testified to his estimated expenses per acre for the corn and bean crops. After the evidence was in Edward sought to amend his counterclaim to conform to proof, claiming that he was entitled to all of the crop proceeds from the farm for that year. His motion to amend to conform to proof was overruled by the trial court in its decree as the trial court found a lack of evidentiary support for the motion.

Numerous issues are stated by the parties for review. We find resolution of the following issues essential to disposition of this appeal:

(1) Did the condition attached to the devise of the farm to Carl Helms in his father's will prevent his ever taking title to the farm?

(2) Was plaintiffs' action, begun more than five years but less than ten years after the execution of the deed in question, barred by the five-year limitation for fraud or permitted under the ten-year period of limitation for the recovery of real estate?

(3) Was the trial court correct in setting aside the deed of conveyance between Carl and the defendants due to illegality of consideration?

(4) If the consideration for the transaction was not illegal, did Algene retain a dower interest in the farm due to the fact she had not joined in the deed of conveyance?

(5) Was the trial court correct in finding for plaintiffs on the counterclaim for crop proceeds on the alternative grounds that the claim was barred by section 633.410,

The Code, or that the counterclaimant had failed to carry the burden of proving the net rental value of the premises?

■ I. As this action to quiet title was brought in equity, our review is de novo. We will give weight to the findings of the district court, but are not bound by them. *Hansen v. Chapin*, 232 N.W.2d 506, 509 (Iowa 1975).

■ The defendants first contend that title to the 105-acre farm never vested in Carl due to his alleged violation of the condition attached to the devise in his father's will. They argue that since the farm never belonged to Carl, he had no interest to transfer in the deed in which he joined, and Algene has no basis for her claimed dower interest in the property. Algene responds by arguing that the limitation on the devise is a condition subsequent which is not self-executing, but must be specifically enforced to have effect. Since there is no indication in the record that the condition was enforced, she contends that Carl took the property under the will. We find Algene's position persuasive, as did the trial court.

Paragraph seven of the will of Albert Helms provides:

Seventh: I give, devise and bequeath to my son, Carl Helms, of Winthrop, Iowa, as long as he refrains from marrying or associating with in any way, Mrs. Don Wittenberg, the following described real estate:

The Northwest fractional Quarter (¼) of the Northwest Quarter (¼) and the West Half (½) of the Northeast fractional Quarter (¼) of the Northwest Quarter (¼) of Section Six (6), Township Eighty-nine (89) North, Range Seven (7), and the Southeast Quarter (¼) of the Northeast Quarter (¼) of Section One (1), Township Eighty-nine (89) North, Range Eight (8), all West of the 5th P.M., in Buchanan County, Iowa, except easement for road, if living, if not, then to his child or children or adopted child or children in equal shares, who may be living at the time

of my death; in the event he has no child or children or adopted child or children living at the time of my death, then to my living sons and daughters in equal shares, further in the event that he does associate with or marry Mrs. Don Wittenberg then the last above described real estate shall go to my sons and daughters in equal shares, if living, and if not, then to their respective children or adopted children in equal shares who may be living at the time of my death; in the event any of them has no child or children or adopted child or children living at the time of my death, then to my living sons and daughters in equal shares.

The devise vested title to the farm in Carl subject to the associational limitation. Thus Carl took the farm subject to a condition subsequent. As we explained in a similar situation:

> It will be noted that Item VII, while first giving to the plaintiff what, standing alone, would be a fee simple absolute, closes with the words "subject to the contingency as hereinafter set forth". This makes the title granted subject to a condition or conditions. It creates what is variously known in the law as a conditional, or defeasible, or base or qualified fee.

*Rodenburg v. Rodenburg,* 247 Iowa 444, 447, 74 N.W.2d 241, 243 (1956). The will of Albert Helms gave to Carl a defeasible interest in the farm.

■ The import of the limitation in Albert's will being a condition subsequent cannot be overstated. It is clearly the law in this state that a testamentary condition subsequent is not self-executing and will fail if not enforced. *DeRousse v. Williams,* 181 Iowa 379, 386–87, 164 N.W. 896, 898–99 (1917). The trial court found that the condition had never been enforced during the probate proceedings or thereafter. Our examination of the record leads us to a like conclusion. Carl took title to the farm under the terms of the will and the condition went unenforced throughout his lifetime. Accordingly, Carl held an interest in the property to which Algene's dower interest attached. *See* section 633.211, The Code.

This conclusion is further supported by the probate proceedings in Albert's estate. Pursuant to the final report filed in Albert's estate, a change of title issued showing Carl to be the owner of the tract in question. The will also included a provision which gave each of Carl's two sisters a cash bequest of ten percent of the appraised value of the estate, and further provided that if the cash remaining in the estate following the payment of expenses was inadequate to meet the aforementioned bequests, then the testator's three sons would each be liable for one-third of any deficiency. In the event any of the sons failed to pay the appropriate amount, "the real estate bequeathed to him in this Will shall be subject to the payment of his one-third share of said deficiency". When it became apparent that there were not sufficient assets in the estate to satisfy the bequests to Anna Helten and Louise Cummings, Carl executed a note, which was later honored, for his share of the necessary amount. If the condition had been enforced, Carl would have had no real estate interest to maintain under the will. These activities clearly indicate that Carl took title to the property under the will and that the condition subsequent was not enforced during the probate proceedings.

We conclude that the condition attached to the farm in question was a condition subsequent and that it was not enforced. Therefore, Carl took title to the property under the will and Algene's dower interest, inchoate at that time, was established. Having decided that Carl held title to the tract in question, we must now determine the validity of the transaction in which he transferred his interest, apparently in exchange for a life estate in the premises.

■ II. The defendants contend that plaintiffs' action, at least to the extent it alleges fraud, is barred by section 614.1(4), The Code, which establishes a five-year statute of limitations for actions based on fraud. The trial court concluded that the action was properly brought as one for the

recovery of real estate under section 614.-1(5), subject to a ten-year period of limitation. Although plaintiffs had alleged fraud as an alternative basis for the relief sought, the trial court did not find a fraud had been perpetrated. Nor do we. The action, as developed at trial, was simply one for the recovery of real estate. As the defendants concede that the action was not barred by the real estate limitation period, we find further discussion of this issue unnecessary.

III. Despite the fact that the warranty deed recited consideration of "one dollar and other valuable consideration", the trial court found that the actual consideration was the forgoing of the enforcement of the condition attached to the bequest of the farm to Carl. The transferees in the deed were those who would take title to the farm if the condition were enforced, and their spouses. The trial court concluded that the limitation contained in Albert Helm's will was invalid and against public policy under the circumstances since it would have encouraged or required Carl's separation or divorce from his common law wife. The court then concluded that the possibility or threat of enforcing the illegal limitation could not furnish valid consideration for the deed and therefore set aside the deed, quieting title in Algene and Carla. We are unable to agree with the trial court and must reverse the judgment of the trial court quieting title in Algene and Carla.

■ The defendants challenge the trial court's analysis in setting aside the deed in several respects. Included are questions of the validity of the associational-matrimonial condition in the will of Albert Helms, the applicability of the parol evidence rule in going behind the consideration stated in the deed, and whether there was sufficient consideration to support the transaction. Particularly, the defendants contend that the trial court erred in characterizing the nonenforcement of the will condition as illegal consideration. We find resolution of this issue dispositive of that portion of the trial court's judgment and decree setting aside the deed. We thus do not find it necessary to discuss defendants' alternative bases for reversal of the trial court and reserve comment upon those issues, although we note that, subject to some limited exceptions such as fraud or illegality, a deed valid on its face need not be supported by consideration. *See, e. g., Timberman v. Timberman,* 229 Iowa 835, 295 N.W. 158 (1940).

■ The defendants contend that the transfer of property was the result of a compromise "settlement" regarding enforcement of the limitation attached to the devise of the 105-acre farm to Carl. They testified that it was agreed Carl would retain a life estate while transferring the remainder interest to those who would otherwise take under the will, rather than enforce the condition and force Carl to leave the farm on which he and his family were living. Citing *In re Estate of Swanson,* 239 Iowa 294, 31 N.W.2d 385 (1948), for the proposition that law favors peaceable settlements of estate disputes among family members, and noting the unsettled legal status of the will condition at the time of the transfer, the defendants argue that the deed merely evidences a familial settlement of an unresolved legal claim. We find this contention persuasive and reverse the ruling of the trial court setting aside the deed.

In so doing we find it unnecessary to address the validity of the condition subsequent attached to Carl's devise. Even assuming that the trial court was correct in finding the condition invalid and against public policy as encouraging divorce or separation, the facts of this case do not require the setting aside of the deed. There is no indication in the record that any of the parties knew of the invalidity of the will provision or that the transaction was the result of anything but good faith bargaining between the parties. The fact that the provision was later determined to be invalid is not dispositive of the question of the adequacy of consideration. As we said in *Rowe v. Barnes,* 101 Iowa 302, 306, 70 N.W. 197, 198 (1897) (citations omitted):

It is well settled that such a [sufficient] consideration exists when a note is given to compromise or settle a disputed claim,

the validity of which is doubtful. And the validity of the compromise, if entered into in good faith by all the parties to it, will not be affected by the subsequent ascertainment of the fact that the claim is without foundation.

We have previously held that forbearance to contest or probate a will may provide adequate and legal consideration to support a contract so long as the position is taken in good faith. *White v. Flood*, 258 Iowa 402, 409, 138 N.W.2d 863, 867 (1965); *Watrous v. Watrous*, 180 Iowa 884, 905–06, 163 N.W. 439, 447 (1917). We believe that a similar analysis is applicable to the case at bar. In determining the legality or validity of consideration, we find an agreement not to enforce a condition subsequent indistinguishable from an agreement not to contest a will so long as the position is held in good faith. As is stated in 1 A. Corbin, Corbin on Contracts, § 140, pp. 603–04 (1963):

> In order that forbearance to press for a legal remedy may be sufficient consideration, it is not necessary that the promise should have had a "fair chance" of success in his action. It can hardly be said that there is any case known to man in which a claimant has absolutely. no chance of success. If he believes that his proposed action is just and believes that he may succeed, his forbearance is sufficient. It is quite unnecessary to determine the degree of probability that he would be successful. Forbearance to contest a will is sufficient consideration, without the promisee's having looked into the facts or law to see whether or not he has a chance.

*Accord*, 1 S. Williston, A Treatise on the Law of Contracts, § 1353 (3d ed. W. Jaeger 1957).

The record in the case before us here does not indicate the existence of anything other than a good faith belief on the part of the defendants that the condition subsequent was legal and enforceable. Additionally, before the legality or enforceability of the condition subsequent could be determined, the court first was required to decide whether a valid common law marriage existed between Carl and Algene such that the effect of the provision was to encourage a divorce or separation. The marital status of Carl and Algene had not been judicially determined at the time of Albert's death, nor does the record disclose that the parties to the transfer were completely certain of Carl's marital status. This ambiguity further supports the conclusion that the invalidity of the condition was not obvious and that the opposite position could easily have been held in good faith. That the condition was later determined to be illegal does not affect the validity of the transaction.

We hold that the trial court erred in finding the consideration supporting the warranty deed was illegal and thus invalid. As any invalidity of the condition subsequent was not obvious and the defendants in good faith thought the provision to be valid and enforceable at the time of the transaction, a promise not to enforce the condition was not an illegal consideration. In effect what we have in the case before us here is a familial attempt to reach a compromise settlement regarding enforcement of a will provision. We have in the past encouraged these settlements, *see, e. g., White v. Flood*, 258 Iowa at 409, 138 N.W.2d at 867, *In re Swanson's Estate*, 239 Iowa at 300, 31 N.W.2d at 389, and continue to do so.

IV. The trial court rendered judgment for the plaintiffs on the first division of their petition and therefore did not reach the plaintiffs' alternative ground for relief. Having concluded that the trial court erred in finding for the plaintiffs on the basis asserted in the first division, we now address the second division of plaintiffs' petition in which Algene sought to assert her dower interest in the farm.[1] We find the record supports Algene's claim in this regard and remand this case to the district court for entry of judgment effectuating the relief sought on her alternative ground.

---

1. No issue regarding the applicability of section 561.13, The Code, to these facts is raised by the parties. We thus have no occasion to apply the statute in resolving this controversy.

■ The trial court correctly found that Carl and Algene entered into a common law marriage and that they did so prior to the death of Albert Helms. The requisite elements of a common law marriage were established. *See, e. g., Winegard v. Winegard*, 278 N.W.2d 505, 510–11 (Iowa 1979). We have determined that Carl took title to the farm in question under the will, subject to the condition subsequent which was not enforced during his lifetime. Thus, Carl held an interest in the property and Algene's dower interest, inchoate until his death, attached thereto. *See* section 633.-211, The Code; *Bowman v. Bennett*, 250 N.W.2d 47, 51 (Iowa 1977). The fact that the marriage was at common law is of no consequence regarding her dower interest so long as common law marriages are recognized in Iowa. *See* 1 American Law of Property, § 5.7 (A. J. Casner ed. 1952).

■ Algene did not join in the deed by which Carl purported to transfer title to the 105-acre farm while retaining a life estate. Her dower interest was not severed by the deed and, while inchoate, remained in the nature of an encumbrance on the property. *Peddicord v. Peddicord*, 242 Iowa 555, 561–62, 47 N.W.2d 264, 268 (1951). Upon Carl's death, Algene's interest ceased to be inchoate and she became the owner of an undivided one-third interest in the farm. Section 633.211, The Code. She is therefore entitled to appropriate relief as sought in division two of her petition.

V. We now address the counterclaimant Edward Helms' assertions of error regarding the trial court's ruling on his counterclaim. He first contends the trial court erred in overruling his motion to amend his counterclaim to conform to proof after the close of the evidence. He sought all of the proceeds from the crops for the year 1975 rather than one-half of the proceeds as initially claimed. The trial court, concluding that the amendment to conform to proof was not timely and did not conform the evidence introduced at trial, overruled the motion. Without passing upon the former of the alternative grounds, we affirm the trial court's ruling on the latter basis.

■ Allowance of amendments to claims to conform to proof is a matter which lies in the sound discretion of the trial court and the ruling of the trial court will be reversed only when a clear abuse of discretion is shown. *B & B Asphalt Co. v. T. S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1977). Edward, apparently assuming the fact that the crop had not been harvested at the time of Carl's death to be dispositive, sought all of the proceeds from the crop as surviving joint tenant. If there had been proof introduced at trial showing that the crops had matured at the time of Carl's death, then the amendment may have been appropriate. *See In re Estate of Luke*, 184 N.W.2d 42, 47 (Iowa 1971); *In re Rahfeldt's Estate*, 253 Iowa 432, 435–36, 112 N.W.2d 858, 860–61 (1962). No such evidence was introduced and the record does not disclose whether the crops had matured or were still growing. The trial court did not abuse its discretion in overruling Edward's motion to conform to the proof.

VI. Edward next argues that the trial court erred in finding for the plaintiffs on his counterclaim for one-half of the proceeds from the 1975 crop. The trial court based its ruling on alternative grounds. It first found that the claim was not timely as it was filed more than six months from the date of the second publication of the notice to creditors in the estate of Carl Helms and was barred by section 633.410, The Code. Alternatively, the court held that Edward had failed to sustain his burden of proof regarding the net lease income value of the farm. Once again we affirm the ruling of the trial court on the latter basis and find it unnecessary to comment upon the alternative ground.

■ The burden of proof was on Edward to prove the measure of his damages with a reasonable amount of certainty. As we stated in *B–W Acceptance Corporation v. Saluri*, 258 Iowa 489, 497–98, 139 N.W.2d 399, 404 (1966):

In order to be entitled to an award of damages, the claiming party has the burden of proving the value of the damages

as to each item with some reasonable measure of certainty. "The rule that uncertainty as to the amount of the damages will not prevent a recovery does not mean that there need be no proof of the amount of the damage. To authorize a recovery of more than nominal damages, facts must exist and be shown by the evidence which afford a reasonable basis for measuring the plaintiff's loss. The damages must be susceptible of ascertainment in some manner other than by mere speculation, conjecture, or surmise and by reference to some fairly definite standard, such as market value, established experience, or direct inference from known circumstances." 22 Am.Jur.2d, Damages, Section 26, page 46.

Edward, as joint tenant with Carl of the farmland in question, sought $14,-816.12 as his share of the crop income from the land. This amount represents roughly one-half the amount received by Algene as administrator of Carl's estate from the Lamont Elevator Company. The record discloses that it was Carl who shared the expenses with the tenant and acted as manager of the property. The record also shows that Edward never received income from the land, but trusted Carl to use the money to maintain and improve the farmland and the buildings thereon. Any attempt to establish Edward's share of the money received by Carl's estate would have to take into account Carl's share-cropping expenses as well as other sums expended in maintaining the property, such as property taxes.

In an attempt to show the crop share expenses, Edward called the tenant of the farm for 1975, who gave his opinion as to the approximate expenses per acre for land planted with corn or beans. On cross-examination, the tenant admitted that he had based his estimates on the whole of the 640 acres he farmed that year and not on the 250 acres in question. He further admitted that expenses such as fertilizer could vary greatly among different tracts. No records of expenses were submitted into evidence. Nor was the breakdown of acres of corn and acres of beans planted, between which

the difference in estimated expenses per acre was considerable, shown. Neither does the record disclose exactly who paid the property taxes or the amount thereof, although Edward's disclaimer of financial involvement with the farm would indicate that they were paid by Carl.

We agree with the trial court that the record developed at trial is inadequate to enable a trier of fact to determine a reasonable measure of recovery without engaging in gross speculation. Even assuming that Edward's claim was not barred by section 633.410, The Code, an issue on which we specifically reserve comment, the trial record would not entitle Edward to any relief. The trial court did not err in finding for the plaintiffs on the counterclaim.

VII. In summary we hold: (1) the limitation attached to Carl's devise in his father's will was a condition subsequent which required specific enforcement to be effective; (2) the plaintiffs' claim as developed at trial did not involve fraud and was therefore not barred by section 614.1(4); (3) the trial court erred in determining that an agreement not to enforce a condition subsequent which was later determined to be invalid constituted illegal consideration; (4) Algene retained a dower interest in the farm when she did not join in the warranty deed; (5) the trial court did not abuse its discretion in denying counterclaimant's motion to amend his counterclaim to conform to proof when the record would not support the amendment; and (6) the trial court did not err in finding for the plaintiffs on defendant's counterclaim due to the failure of the counterclaimant to prove the measure of his damages with a reasonable degree of certainty.

Accordingly the judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

All Justices concur, except UHLEN-HOPP and McCORMICK, JJ., who concur specially.

UHLENHOPP, Justice (concurring specially).

I think paragraph seven of the will purports to create an estate in fee simple determinable with a provision that on the happening of the stated event the land passes to specified persons. Restatement of Property § 44 and Comment *o* (1936). *See Reichard v. Chicago, Burlington & Quincy Railroad Co.*, 231 Iowa 563, 568–74, 1 N.W.2d 721, 728–29 (1942); *Des Moines City Railway v. City of Des Moines*, 183 Iowa 1261, 1267–71, 159 N.W. 450, 452–54 (1916), *modified*, 183 Iowa 1261, 165 N.W. 398 (1918); R. Swenson, *Possessory Estates and Future Interests in Iowa*, 36 Iowa Code Ann. 73, 79–83 (1950). In addition I think the limitation is invalid under the circumstances of this case, as the trial court held; Carl and Algene were husband and wife at all times material to this case. Restatement of Property § 427 (1936).

Carl's deed to defendants, growing out of the family settlement, was valid so far as his ownership of the land was concerned, but Algene did not execute the deed or otherwise release her dower. She is entitled to dower and I therefore concur in the result.

McCORMICK, J., concurs in this special concurrence.